F. J. Thurman v. State

156 So. 484.
Opinion Filed September 10, 1934.

*Dillon Hartridge* and *Lester W. Jennings,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

Brown, J.—Plaintiff in error, who was defendant in the court below, was indicted by a grand jury in Clay County for the violation of Section 7657, Comp. Gen. Laws; was found guilty, and a judgment of conviction and sentence to the penitentiary imposed. The indictment charged that the defendant, in a place known as the Silver Wing Club,

a certain building in the town of Orange Park, in said county, had unlawfully kept and maintained in his possession a gaming table and other gaming instruments or apparatus, therein described, for the purpose of gaming or gambling.

It appears that the sheriff of the county, having heard at various times during a period of several months that gambling was being carried on in the Silver Wing Club, searched the building without a warrant, and while he did not see any gambling going on, he found the gambling paraphernalia described in the indictment in a closed room located to the rear of the dining room, except one piece of such apparatus which was found in the kitchen. The sheriff seized the articles so found, and upon the trial of the defendant they were introduced in evidence over the defendant's objection, and an exception was taken. The defendant testified that he was manager of, and operated, the dining room, dance floor and kitchen, but that he had nothing to do with the gambling room, which was run and operated by another party whose name was stated, but defendant admitted that he knew the room contained gambling devices. He was convicted, and the judgment of conviction is brought before us on writ of error. Seven errors are assigned, but we are inclined to think that the only reversible error appearing in the case was the admission in evidence over the defendant's objection of the gambling apparatus seized by the sheriff. If this was error, it was harmful error, because it cannot be said that there was sufficient evidence aside from this to sustain the verdict of conviction, which verdict was attacked by a motion for new trial. The statute provides that if any of the devices or apparatus commonly used in games of chance in gambling houses are found in any house, room or place, it shall be *prima facie*

that the said house, room or other place is kept for the purpose of gambling. Section 7661, Comp. Gen Laws.

This Court held in the case of Gildrie v. State, 113 So. 704, 94 Fla. 134, that evidence (stolen property) obtained by the unlawful search of a dwelling is not admissible to prove the occupant of such dwelling house guilty of the offense of burglary, when such evidence was obtained in violation of and contrary to the provisions of Sections 12 and 22 of the Declaration of Rights of the Constitution of Florida, and on timely objection being made, such so-called evidence should be excluded. The opinion in that case, which was by Mr. Justice BUFORD, and which opinion has been followed in later cases, cited Jackson v. State, 87 Fla. 262, 99 So. 546; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, and other cases.

In Robertson v. State, 94 Fla. 770, 114 So. 534, this Court speaking through Mr. Justice BUFORD, said:

"This Court has recently held that evidence procured under an invalid search warrant, when seasonably objected to, should not be admitted to prove the guilt of one whose house has been unlawfully searched." (Citing the Gildrie case, also 24 A. L. R. 1359, et seq., and 32 A. L. R. 383, et seq.) The same rule would also apply to evidence obtained by an unlawful search conducted without a warrant."

See also Warwick v. State, 104 Fla. 393, 140 So. 219, which involved the search of a prisoner's private dwelling while he was confined in jail, without a search warrant, and the evidence thus obtained was held to be inadmissible. In the case of Cooper v. State, 106 Fla. 254, it was held that where the affidavit constituting the basis of a liquor search warrant was insufficient, evidence procured thereunder was inadmissible, on timely objection being made. In that case, the residence of the accused was searched.

Section 22 of our Declaration of Rights in the Florida Constitution reads as follows:

"Section 22. The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated, and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized."

It will be noted that this section has the same meaning, and uses almost identically the same language, as the fourth amendment to the federal Constitution.

The Attorney General argues that in this case the search and sizure was lawful and the evidence admissible under Section 7664, Comp. Gen. Laws, which reads as follows:

"If any Sheriff, City Marshal or Chief of Police, has good reason to believe that gambling is being carried on in any house or other place, he may enter the same, forcibly if necessary, and without written warrant, and may arrest any person violating the provisions of this article."

This section of the Comp. Gen. Laws was derived from Section 5 of Chapter 3764, Acts of 1887, but in later revisions of our general statutes one qualifying clause in this section has been omitted. In the original Act of 1887, after the words "any house or other place" there immediately follows the words, "mentioned in Section 1 of this Act." which Section 1 of the Act referred to now appears as Section 7657 C. G. L.

So this case turns upon the constitutionality of Section 7664, as it now appears in the Comp. Gen. Laws of 1927. Plaintiff in error contends that said section is unconstitutional in that it is in conflict with Sections 12 and 22 of our Declaration of Rights. The validity of this section has never been passed upon by this Court, although in Wooten v.

State, 24 Fla. 355, 5 So. 39, it was said that, assuming this section of the statute to be unconstitutional, the constitutionality of another section of the same Act there under consideraion would not be impaired, the two being entirely independent.

It is possible that Section 7664 has been repealed by Chapter 9321 of the Acts of 1923, a general law dealing with search warrants, consisting of 21 sections, most of which now appear as Sections 8502 to 8518 Comp. Gen. Laws of 1927. Section 4 of that Act, being Section 8506 C. G. L., provides for the use of a search warrant upon proper affidavit in certain cases and for certain purposes, among them being "when the property shall have been used or is being used in connection with gambling implements and appliances." But aside from any question of implied repeal of Section 7664 by the later Act just referred to, which is a debatable question, it would appear that Section 7664 C. G. L. is not constitutional under our own decisions, as being in conflict with Section 22 of our Declaration of Rights, and also under the reasoning employed by the Supreme Court of the United States in construing the fourth amendment to the Constitution of the United States, which, as above stated, is in almost the identical language of Section 22 of our Declaration of Rights.

In the case of Haile v. Gardner, 82 Fla. 355, 91 So. 376, this Court, speaking through Mr. Justice WHITFIELD, said: "This organic provision in purpose and effect forbids the Legislature to enact laws that authorize unreasonable searches or seizures as well as forbids unreasonable searches and seizures by officers purporting to act under laws that authorize reasonable seizures and searches. What is a reasonable law authorizing a search or seizure, is ultimately for judicial determination upon due consideration of the nature and extent of the evil designed to be remedied and the

provisions of the law. What is a reasonable or valid search or seizure, is to be determined by the courts upon due consideration, of the circumstances and manner in which the search or seizure is made by the officer. No search or seizure is permissible under the law without a proper warrant duly issued, except as a reasonable search and sizure may be allowed by law as an incident to a lawful arrest."

In the opinion in that case the decision of the Supreme Court of the United States in Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed., 647, was cited. We might note in passing that, among other things, it was held in the Gouled case, that the admission in evidence against the accused in a criminal case of evidence obtained by an illegal search of his premises and seizure of his private papers controverts the guaranty of the fifth amendment to the United States Constitution against self-crimination. Evidently the clause referred to is the clause which also occurs in Section 12 of the Declaration of Rights in the Florida Constitution, which provides that no person shall be "compelled in any criminal case to be a witness against himself, or be deprived of life, liberty or property without due process of law."

It is perfectly clear under our Constitution, statutes and decisions, that if the search and seizure involved in this case had been made in the defendant's private dwelling house, it could not have been constitutionally justified, nor the articles seized introduced in evidence, in spite of Section 7664 C. G. L., unless a valid search warrant had first been obtained; in other words, Section 7664 C. G. L. could not be validly applied so as to authorize the search of a private home without proper warrant. The language of the section, however, is broad enough to cover "any house or other place," private homes included, if the officers named in the statute have "good reason to believe that gambling

is being carried on therein." This raises the further question as to whether under said Section 7664 C. G. L. a citizen's place of business, or his office; or his workship, may be searched by any of the officers named, without a warrant, merely because such officer has "good reason to believe" that gambling is being caried on therein. If this question be answered in the negative, the statute would probably be unconstitutional *in toto,* because, as it is drawn, it authorizes the forcible entry, without written warrant, of *any house,* if the Sheriff, City Marshal or Chief of Police, has "good reason to believe" that gambling is being carried on in such house. As worded, this statute would apply to dwellings, stores, restaurants, offices, or in fact any house or place, if the officer has "good reason to believe" that gambling is there being carried on. The section referred to authorizes the forcible entry without written warrant, and the next section, 7665, authorizes the seizure of gambling apparatus found therein, to be held subject to the discretion of the court, to be used in evidence, and afterwards publicly destroyed under order of the court. Thus it appears that if Section 7664 cannot be constitutionally applied so as to authorize forcible entry of and seizures in dwellings, stores, offices, etc., this section would have to be held unconstitutional as a whole in that it shows a plain legislative intent that it was to apply to "any house or other place" in which any one of the officers named has "good reason to believe" that gambling is being carried on. This statute goes further than any provision of our national or State prohibition laws.

Even where search and seizure are made under the authority of search warrants, our decisions and those of most of the other states in the Union require that both the search warrant and the prerequisite oath or affirmation required

for it, must conform strictly to the constitutional and statutory provisions authorizing their use.

"This is true," said Mr. Justice TERRELL in the case of Jackson v. State, 87 Fla. 262, 99 So. 548, "because there is no process known to the law the execution of which is more distressing to the citizen or that actuates such intense feeling of resentment on account of its humiliating and degrading consequences. As thus enunciated the law is in line with and is no doubt the child of our Anglo Saxon spirit of liberty which holds every man's house or dwelling as his castle, and which declares that it must not be invaded or subjected to an uninvited search except by a duly qualified officer, and then only in pursuance of a valid writ commanding it."

"It was unlawful searches and seizures and the abuse of search warrants, both in England and the American Colonies, which resulted in the enactment of constitutional safeguards in the Federal and State Constitutions. Justice BRADLEY, in his great opinion in the case of Boyd v. United States, 116 U. S. 616, 29 L. Ed., 746, gives a very interesting review of these conditions, which were fresh in the memories of those who achieved our independence and established our form of government. In that opinion, Justice BRADLEY reviews at some length Lord Camdeen's memorable discussion of the subject in the case of Entick v. Carrington, 2 Wills. 275, 95 Reprint 907. See also other cases cited in 56 C. J. on page 1155.

There is also a valuable review of the history and development of the law on this subject by Mr. Chief Justice TAFT in his able opinion in the case of Carroll v. United States, 267 U. S. 132, 69 L. Ed., 543. In that case, it will be remembered, the Supreme Court of the United States held that search and seizure of an automobile could be made without a warrant, where the officer acted upon prob-

able cause, that is, upon the belief, reasonably arising out of circumstances known to the seizing officer, that such automobile contained that which by law was made subject to seizure and destruction. In the opinion in that case it was said:

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

This is tantamount to saying that under the fourth amendment to the Constitution of the United States, it would not be lawful to search a dwelling house, store or other structure, without a search warrant.

Another interesting case dealing with this general subject is that of Byars v. United States, 273, U. S. 28, 71 L. Ed., 520, in which it was held that a search warrant was invalid which was based on an information stating that the affiant has "good reason to believe and does believe that defendant had in his possession" the intoxicating liquors, instruments and materials sought by the warrant, which is not the language used in the constitutional provision. It was also held in that case that a search prosecuted in violation of the Federal Constitution is not made lawful by what it brings to light, and that the evidence thus discovered could not be used against the victim of the unlawful search where a timely challenge is interposed; that constitutional

provisions for the security of person and property are to be liberally construed, and that it is the duty of the courts to be watchful for the constitutional rights of the citizen and against any stealthy encroachments thereon. See also Co-Bart Inspecting Company v. United States, 282, U. S. 344, 75 L. Ed., 374, where in it was held that the protection of the fourth amendment against unreasonable searches and seizures extended to a business office. It was also held in that case that said amendment prevents the issue of search warrants on loose, vague, or doubtful cases of fact, and emphasizes the purpose to protect against all general searches; that since before the creation of our government, such searches have been deemed obnoxious to fundamental principles of liberty and are denounced by the constitution or statutes of every state in the Union; that the need of such protection is attested both by history and by present conditions. See also in this connection, 56 C. J. 1163-1165.

Of course, the fourth amendment to the Federal Constitution operates solely upon the actions of the Federal Government and its agents, and is not binding upon the states. However, our Constitution contains the same provision and the decisions of the Supreme Court of the United States are therefore very persuasive in construing the meaning and scope of our own constitutional provision. Indeed, our Legislature has by statute adopted the opinion in Carroll v. United States, *supra,* as the law of this State. See Chapter 12257, Acts of 1927, page 1138.

In this connection reference might also be made to 24 R. C. L., 717, 725; 56 C. J. 1153, 1166, 1167 and also the numerous cases therein cited, which indicate that the protection of the constitutional provision extends to houses and places of business, as well as to houses used as homes, and that the search of such places and the seizure of personal property therein, even contraband articles, without a search

warrant based on probable cause, and the other requirements of Section 22 of our bill of rights, is not contemplated by that constitutional provision. See U. S. v. McBride, 287 Fed. 214; certiorari denied, 261 U. S. 614. This provision makes the question of "probable cause" a judicial question, to be determined by a judge or magistrate before he issues the search warrant, whereas Section 7664 delegates this judicial power to the seizing officer.

In this case the evidence indicates that the sheriff had been hearing for several months that gambling was, at various and sundry times, going on in the Silver Wing Club House, and if the evidence thus coming to him constituted probable cause, the sheriff had ample opportunity to obtain a search warrant before entering and searching the house. It is true that the larger portion of the house seems to have been occupied by a dining room, which was open to the public, like a restaurant, and it is possible that the sheriff might have entered and did enter this dining room without committing a forcible trespass, but he also entered and searched a room which was not open to the general public and which had a sign on it indicating that it was a private room. He also searched the kitchen, which was not open to the public, and it was in this private room and in the kitchen that the gambling apparatus was found and seized.

Even if Section 7664 should be held valid, it would have to be strictly construed. See Solomon v. State, 153 So. 302, and special concurring opinion by Chief Justice Davis on denial of rehearing on May 11, 1934.

But as this statute authorizes a forcible entry without a search warrant, of "any house," whether dwelling house or any sort of house; and upon "good reason to believe" rather than upon "probable cause supported by oath or affirmation," our conclusion is that Section 7664 of Comp. Gen. Laws is in conflict with Section 22 of the Declaration of

Rights in our State Constitution and must therefore be null and void.

It necessarily follows that the evidence thus secured and admitted in evidence over the objection of the defendant was erroneously admitted, and that the judgment of the court below must be reversed.

Reversed and remanded.

DAVIS, C. J., and ELLIS and BUFORD, J. J., concur.

WHITFIELD and TERRELL, J. J., dissent.