STATE v. CARLISLE, et al.

Nos. 12696, 12697.

Circuit Court, Marion County, Criminal Appeal.

August 31, 1959.

John R. Godbee, Jr., Deland, for the appellants.

Gordon G. Oldham, Jr., State Attorney, Leesburg, for the appellee.

CARROLL W. FUSSELL, Circuit Judge.

Appellants were tried and convicted in the county judge's court in and for Marion County, on a warrant charging that they, together with two other defendants, did unlawfully hunt, shoot, kill, take or attempt to take, a doe deer.

The principal ground for reversal argued by appellants is that the court erred in denying their motion to suppress evidence obtained through an alleged illegal search. Since the appellants did not testify or offer any evidence in their defense, the facts appear solely from the testimony of the game commission officers and the articles admitted in evidence. Thus, under the undisputed facts, two officers of the game commission, while on duty in the Ocala Wildlife Management Area, at about 11:30 P.M., saw an automobile come to a halt in the area near Juniper Springs at a point about four-tenths

of a mile west of them. The headlights of this automobile were shining toward these officers and almost immediately after it stopped they heard a shotgun fire one time. The automobile then started forward. The two officers, in separate cars, chased this car and stopped it about a mile and a half from the place where the shooting occurred. The officers did not see any light other than the headlight from the car; saw no flame from the shotgun, and could not testify whether the gun was fired from the car, but only that they heard a gun fired close to where the car was stopped. This automobile did not exceed the speed limit or violate any law upon leaving after this shot was fired. One of the officers asked to look in the trunk of the car and the driver got out of the car, voluntarily opened the trunk for his inspection. No game or deer were found in the car. One of the officers saw a shotgun lying between two men on the front seat, and without obtaining permission to do so, took the shotgun out of the car, examined it, smelled the barrel and gave it to the other officer to keep. The other officer also smelled the barrel and then put it in his car. The first officer also saw a light on the front seat of the car between the two men, which he took out of the car without asking them for it or obtaining their consent to take it. This was also handed to the other officer who was told to keep it.

The appellant, LeRoy Carlisle, was the driver of the automobile, and the appellant, Charles Donald Smith, was in the back seat. Another defendant, who is not involved in this appeal, was on the front seat with the driver. All of this was done without an arrest being made and, in fact, no arrest was made until about 45 minutes later when one of the officers returned with the fourth defendant.

This officer left the other officer with these three defendants and then picked up another officer and went to the scene where the shooting had been heard. He saw one of the defendants there and when he ran, chased him and eventually caught him. He also discovered a doe deer near the highway at this point which had been shot and killed with buckshot from a shotgun and had been dragged behind some bushes near the highway. All parties then went back to the first three defendants and these defendants were then arrested. The defendant, LeRoy Carlisle, was then searched and two OO buckshot shells were found on him; and while taking these defendants to the jail in Ocala one of the officers discovered on the back seat of the car a paper bag which contained buckshot shells for the shotgun he had taken from the defendants.

Timely motion was filed by the appellants to suppress the evidence thus obtained, which they allege was obtained by reason of an illegal search.

The officers testified as expert or skilled witnesses that burnt powder from a discharged shotgun shell has a distinct odor in the barrel of the gun for 15 to 30 minutes after it has been discharged; that when they smelled the shotgun it had this distinct odor of a recently discharged shell, and that it was only about two minutes between the time when they heard the shot from the shotgun until they stopped the defendants and smelled the shotgun. They further testified that based on the odor they detected in the barrel of the shotgun, they could definitely say that this shotgun had been very recently discharged.

The shotgun, light, shells and deer were admitted in evidence over the objection of the defendants.

It clearly appears that the shells in the pocket of LeRoy Carlisle, the shells in the back of the car in the paper bag, and the deer, were properly admitted in evidence, as any search under which they were obtained occurred after and as an incident to the legal arrest of the defendants. It also appears clear to this court that the officers had probable cause to arrest the defendants when they stopped them and saw the shotgun and light in the car, and that this was the result of their immediate pursuit after they heard the shot from the shotgun in the Wildlife Area. However, apparently, for some reason, the officers were not completely satisfied that they had sufficient evidence to warrant the arrest of the defendants, and the search and examination of the shotgun and light was made at that time for the purpose of acquiring further evidence—but no arrest was made of these men until some 45 minutes later after they had caught the other defendant and located the doe deer.

Since the officers had seen no light other than the headlights of the automobile and no flame from the gun, and had nothing to connect the gun with this shot, it was certainly material to the case for them to be able to offer evidence that they had smelled the barrel of this shotgun within two minutes after they had heard one shot and that this very gun had been recently discharged. This was, therefore, a very material fact of evidence for the jury to consider in determining that these defendants were engaged in this unlawful act.

A very good article on searches and seizures may be found in volume 8, University of Florida Law Review, page 286. The Florida cases are reviewed in this article, and particularly those which might be found applicable to the situation involved in the instant case.

Unreasonable searches in Florida are prohibited by the provisions of section 22 of the Bill of Rights, Florida Constitution— "The right of the people to be secure in their persons, houses, papers

and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons and thing or things to be seized."

As pointed out in the article, there are four situations in which a search and seizure may be made without a search warrant. Only unreasonable searches and seizures are prohibited by the constitution. These four situations where a search warrant is not necessary arise in circumstances—(1) incident to lawful arrest; (2) where voluntary consent to the search is given; (3) to vehicles where there is probable cause; and (4) of certain establishments regulated by state agencies.

In this case there was no search warrant. The search and seizure objected to was made prior to and not incident to a lawful arrest, and the search was not made of any establishment regulated by state agencies. Therefore, if the search and seizure in this case was legal, it will be necessary to show—(1) that voluntary consent to the search was given, or (2) the search was of a vehicle when there was probable cause.

As to the first question, the case of Sagonias v. State of Florida, 89 So. 2d 252, seems to involve a similar situation and be decisive of the law. In that case the defendant was stopped without an arrest being made at that time and was told by the officer that the officer was looking for contraband whiskey. The defendant stated that he had none and took the keys out of his car and opened the rear end to disclose to the officer that no whiskey was in the trunk. The officer then opened the left front door of the car and saw two or three paper sacks containing money and what he presumed were lottery tickets. The court held that the state proved no connection between any voluntary act on the part of the defendant and the activities of the officer in connection with the supposed lottery materials. The court said at page 254—"In the instant case, it could be found, on the basis of the equivocal testimony of Whiddon, only that appellant did not actively resist the search for contraband whiskey. True, he voluntarily unlocked the trunk, but this was empty. The clear and convincing character of the evidence of such consent which must in our opinion, appear in the record to support a finding of waiver is absent in this case. See Dunnavant v. State, 46 So. 2d 871."

As a matter of fact, the statutes of the state of Florida give to the game officers the right to stop and search without a search warrant a vehicle which they have probable cause to believe has in it game illegally taken or possessed by the occupants of the vehicle.

It is the opinion of this court that probable cause existed for such a search and, therefore, no voluntary consent was necessary on the part of the defendants for the game officers to make such a legal search for *game*.

The material parts of the statutes authorizing this procedure are—

372.07. *Police powers of commission and its agents*—The game and fresh water fish commission, and each and every of its duly authorized conservation agents, have power and authority, throughout the state, to enforce all laws relating to game, * * *, and in connection with said laws, in the enforcement thereof and in the performance of their duties thereunder, to go upon all premises, * * *; * * * arrest upon probable cause without warrant any person found in the act of violating any of the provisions of said laws or, in pursuit immediately following such violations, examine any person, boat, conveyance, vehicle, game bag, game coat, or any other receptacle for game * * * seize and take possession of all game * * * which may have been taken or had in possession or under control * * * at any time or in any manner contrary to said laws.

372.76. *Search and seizure authorized and limited*—The game and fresh water fish commission and its conservation officers shall have authority when they have reasonable and probable cause to believe that the provisions of this chapter have been violated, to stop any * * * vehicle * * * and to search for and seize any such game * * * had or held therein in violation of law. Provided, however, that no search without warrant shall be made under any of the provisions of this chapter unless the officer making such search has such information from a reliable source as would lead a prudent and cautious man to believe that some provision of this chapter is being violated.

It appears clear to this court that under the above statutes the authority to search given to officers of the game commission is solely a right to search for game and not for any other purpose. It could not, therefore, be seriously contended that the game officer was engaged in a search for illegal game when he took the shotgun from the defendants without their voluntary consent, smelled the barrel, examined it and immediately took it into his possession and has kept it in his possession continuously to this date—all of which was done prior to any arrest and prior to the discovery of any game.

Now, as to the second situation or question dealing with searches of vehicles when there is probable cause. It appears clear to this court that this refers only to those vehicles which are transporting or carrying contraband. The article in 8 University of Florida Law Review entitled "Vehicular Searches Upon 'Probable Cause'" is quoted as follows, page 292—"The second exception, search of vehicles upon 'probable cause' alone, arises from section 933.19 of Florida Statutes 1953 which adopts the provision of the opinion in

Carroll v. U.S., 267 U.S. 132. The defendants in this case were convicted of transporting whiskey in violation of the National Prohibition Act. The search and seizure was upheld as reasonable, even though it was made without a search warrant and was not incident to a lawful arrest, because the arresting agents had probable cause to believe that the defendants were *transporting whiskey* and if they had waited to procure a search warrant defendants would have been many miles away."

Under this part of the article, Collins v. State, 65 So. 2d 61, is quoted, and in this case Justice Thomas said—

> To use the words of Mr. Chief Justice Taft in Carroll v. U. S., 267 U. S. 132: "* * * those lawfully within the country, entitled to use the public highways, have the right to free passage without intervention or search unless there is known to a competent officer, authorized to search, probable cause for believing that their vehicles were carrying *contraband or illegal merchandise."*

> Our discussion is now narrowed to the manner in which a search, without warrant, of a vehicle may be properly made, and the evidence obtained thereby may become competent. In other words, how strongly must an officer believe a fleeing car is carrying *contraband* for the officer to halt the vehicle and search it, without warrant, and make the articles seized by him admissible in evidence?

> As early as 1924 the Supreme Court of the United States, in Carroll v. U.S., supra, enacted as Florida law by the Legislature, Chapter 12257, Laws of Florida, Acts of 1927, recognized the distinction between a prerequisite of a warrant for the search of a private dwelling and for the search of a motor car. The reason is obvious. Because of the high degree of mobility of automobiles efforts of officers to apprehend persons carrying *contraband* in them would be thwarted if no searches of such vehicles could be accomplished under any circumstances except by authority of warrants.* * *

> We went even further in Brown v. State, Fla., 46 So. 2d 479, and held that where the officer had "trustworthy information" that a car was carrying *contraband* he could arrest the driver and seize the contents for use in the trial, although a search warrant had been obtained and held invalid because of defects in the affidavit on which it was based. * * *

> Putting together the decisions of the Supreme Court of the United States and the decisions of this court, which we think are harmonious, we reach the conclusion that it is safer procedure to secure a search warrant preliminary to stopping a motorist and searching his car; that if halting, searching and seizing are accomplished without such a warrant the officer must be prepared to show that he had "probable cause" for his acts or "reasonable belief" or "trustworthy information" that the car was engaged in the transportation of *contraband.* (Italics added.)

The pertinent portions of the Florida statute adopting the law as expressed in Carroll v. U.S. as a statute law of Florida is as follows—

933.19 *Searches and seizures of vehicles carrying contraband or illegal intoxicating liquors or merchandise.*—The provisions of the opinion rendered by the supreme court of the United States on March 2, 1925, in that certain cause wherein George Carroll and John Kiro were plaintiffs in error and the United States was defendant in error, reported in 267 United States Reports, beginning at page 132, relative to searches and seizures of vehicles carrying *contraband or illegal intoxicating liquors or merchandise,* and construing the fourth amendment to the constitution of the United States, are adopted as the statute law of the state applicable to searches and seizures under §22 of the bill of rights of the constitution of the state, when searches and seizures shall be made by any duly authorized and constituted bonded officer of this state exercising police authority in the enforcement of any law of the state relative to the unlawful transportation or hauling of *intoxicating liquors or other contraband or illegal drugs or merchandise prohibited or made unlawful or contraband* by the laws of the state. * * *

All points of law decided in the aforesaid case relating to the construction or interpretation of the provisions of the constitution of the United States relative to searches and seizures of vehicles carrying contraband or illegal intoxicating liquors or merchandise shall be taken to be the law of the state enacted by the legislature to govern and control such subject. (Italics added.)

Thus, from the Carroll case itself, from the Florida statute adopting the Carroll case as the law of Florida, and from the decisions of the Supreme Court of Florida, it clearly appears that the exception as to the necessity for a search warrant applies only to vehicles when they are transporting or hauling *intoxicating liquors or other contraband or illegal drugs or merchandise* prohibited or made unlawful or contraband by the laws of the state.

The general rule requiring a search warrant is applicable to all other searches, including searches of vehicles—unless the vehicles are engaged in hauling or transporting *contraband.*

This general rule is stated in Melton v. State, 75 So. 2d 291, one of the headnotes for which states at page 292—"Where peace officer did not intend to arrest defendant unless he was successful in first discovering something of an inculpatory nature that would tend to establish the corpus delicti, and officer did not in fact arrest defendant until after search had been made and moonshine whiskey seized under wholly invalid search warrant, such seizure of whiskey was not incidental to arrest, and hence, *even though officer would have been authorized to make arrest without a warrant, the whiskey thus illegally seized before arrest was not admissible in evidence against defendant."* (Italics added.)

It would seem that this is the rule that should be applied to the instant case. This appears to be the identical situation as disclosed by the instant case. The officers did not make the arrest, but planned

on waiting until they had discovered better evidence or the corpus delicti, which was in this case the doe deer. The arrest was made after the discovery of the doe deer and, of course, was a proper arrest at that time, and, in the opinion of this court the officers could have arrested the defendants when they first stopped them, and especially when they saw the shotgun and light on the front seat of the car. However, it is this court's opinion that the testimony with regard to the recently burnt powder was very and most material in this case in linking the defendants with this crime, and since no arrest was made prior to the time this gun was taken over and examined by the officers, the evidence thus obtained was illegally obtained and should have been suppressed.

"A search must be lawful in toto and one that is unlawful ab initio is not made lawful by what is found in consequence thereof." Kraemer v. State, 60 So. 2d 615.

"An illegal search cannot be made legal by the fruit it produces." Brown v. State, 62 So. 2d 348.

The game officers testified that it was not illegal for the defendants to have the shotgun and light in their car, nor did they testify that there was any contraband of any nature in the car of the defendants at any time.

Section 372.73, with regard to confiscation, provides—"*Confiscation and disposition of illegally taken game, etc.*—All game and fresh water fish seized under the authority of this chapter shall, upon conviction of the offender, or sooner if the court so orders, be forfeited and given to some hospital or charitable institution and receipt therefor sent to the commission of game and fresh water fish. * * * "

All the cases cited in the article in volume 8 of the University of Florida Law Review, supra, in connection with vehicular searches upon probable cause, deal with automobiles engaged in transporting *illegal liquor or lottery tickets*. No Florida case has been found or is cited in this article holding a search of a vehicle to be legal which is based solely on probable cause and where the vehicle is not engaged in hauling or transporting *contraband*. On page 293 it is stated in the article—"In recent years the Supreme Court of Florida has become more strict in automobile search cases." This is certainly borne out by the cases cited.

In Kersey v. State, 58 So. 2d 155, Mr. Justice Terrell said—

We are conscious of the law authorizing police officers to arrest one without a warrant who commits a crime in his presence, but we do not understand that such a law authorizes him to block the highway in front

of one who is lawfully traveling it and take him in custody on nothing more than a bare suspicion that he is violating the law. This court is committed to the doctrine that an officer without a search warrant or warrant of arrest, has no right to stop one on the public highway, particularly in the night time, and demand that he surrender what he has in his possession. Tillman v. State, 81 Fla. 558, 88 So. 377; Thurman v. State, 116 Fla. 426, 156 So. 484; Haile v. Gardner, 82 Fla. 355, 91 So. 376; Carroll v. United States, 267 U. S. 132, 45 S.Ct. 280, 69 L. Ed. 543; Weeks v. United States, 232 U. S. 383, 34 S.Ct. 341, 58 L. Ed. 652.

In addition to the foregoing cases, other State and Federal decisions support this rule. It is accordingly our view that the arresting officers exceeded the allowable liberty of authority vested in them account of which the evidence was illegally secured and the arrest was unreasonable. It follows that the motion to suppress should have been granted.

## In Kraemer v. State, 60 So. 2d 615, Mr. Justice Hobson said—

Even law enforcement officers should not be allowed to invade constitutional rights upon nothing more than suspicion, although ultimately justified; nor should suspicion be substituted for known facts which alone can form a lawful basis for probable cause. The countenance of such procedure would be but the initial step toward the introduction of "gestapo" methods. The end result of such an invasion of personal constitutional rights does not justify the means by which it was attained. As was stated by Mr. Justice Mathews when speaking for this court in his clarification opinion filed June 27, 1952 in the case of Borrego v. State of Florida, 62 So. 2d 43, "It is more important that the Constitution be upheld and fundamental rights guaranteed by it be protected, than it is for a conviction to be obtained in a particular case with illegal evidence." * * *

The time has not yet come—Deo volente may it never arrive—when an American citizen traveling in a lawful manner upon a public highway may be apprehended and his person and effects searched in utter disregard of his constitutional rights.

We are forced to hold that reversible error was committed when the trial judge denied appellants' motion to suppress the evidence and also when he overruled the objections to the introduction of the lottery tickets and the money.

## In Collins v. State, 65 So. 2d 61, Mr. Justice Thomas said—

Certainly at this late date, after repeated expressions of the courts on the subject, every well-informed officer should know that searches may not be lightly made and that if evidence gained from a search is to be properly introduced and a judgment founded thereon is to withstand the assaults upon it, likely to be made, the guaranties of the Constitution must be honored. However zealous an officer may be to stamp out the evil of the lottery he cannot throw caution to the wind and he cannot expect any courageous court to support him on the fallacious theory that "the ends justify the means." An "illegal search cannot be made legal by the fruits it produces." Brown v. State, Fla., 62 So. 2d 348, 349.

It seems to be fitting to quote, in this connection, the words of Mr. Justice McReynolds in his concurring opinion in Carroll v. United States, supra:

"The damnable character of the 'bootlegger's' business should not close our eyes to the mischief which will surely follow any attempt to destroy it by unwarranted methods. 'To press forward to a great principle by breaking through every other great principle that stands in the way of its establishment; * * * in short, to procure an eminent good by means that are unlawful is as little consonant to private morality as to public justice.' Sir William Scott, The Le Louis, 2 Dodson [Adm.] 210, 257 [165 Eng. Reprint, 1464, 1479]."

### In Ippolito v. State, 80 So. 2d 332, Mr. Justice Hobson said—

Under the peculiar circumstances of this case, we think that the constitution of Florida was violated, and the search was unreasonable. The independent major traffic violation which would have justified appellants' apprehension, Brown v. State, Fla., 46 So. 2d 479; Longo v. State, 157 Fla. 663, 26 So. 2d 318, was apparently caused by the deliberate acts of the officers themselves, which savor very strongly of entrapment if they do not actually amount to a species thereof. The practice of officers patrolling the streets "in disguise" in unofficial cars is not to be encouraged, not because it is not "sporting", for Anglo-American jurisprudence during the past hundred years has been more and more firmly and commendably opposed to any sporting theory of justice, but because it gives rise to problems of the type before us and may well involve innocent persons in wild chases, endangering life and property. We cannot condone these ill-advised acts of violence which, for aught that appears, were entirely caused by the officers themselves.

### and Mr. Justice Barns in his concurring opinion said—

I concur. Section 22 of the Declaration of Rights of the Constitution, F.S.A. provides that "the right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated". No search warrant was issued and it is doubtful that the facts known before arrest were sufficient to justify the issuance of a search warrant if that course had been pursued. The arrest cannot justify the search and in turn the search justify the arrest. See Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436.

### In Byrd v. State, 80 So. 2d 694, Mr. Justice Hobson said—

We turn next to consider the circumstance of whiskey dripping from the truck after it was stopped. This circumstance, although it may be isolated for purposes of discussion, should not and cannot be disassociated from the fact that the stopping of the truck for the reason assigned was illegal, because if we were to forget the unauthorized stopping we would have a different case than the one before us. There is at present no law against transporting whiskey on the highway. The possession of whiskey is not unlawful of itself, as is, for example, the possession of lottery materials. The case is thus distinguishable from such cases as Fletcher v. State, Fla., 65 So. 2d 845, where the occupant of a parked vehicle had lottery tickets and pads on the seat beside him and in plain view of the officers who arrested him. The law seeks to prevent the transportation of *contraband* whiskey, i.e., whiskey upon which the required tax has not been paid. And although the officers saw, tasted and smelled the substance

dripping from appellant's truck and pronounced it to be whiskey, it is obvious that they could not identify it as *contraband* whiskey, because no one can discern the absence of a revenue stamp by such tests. * * *

We hold further that the State failed to show either at the hearing on petition for writ of habeas corpus or on motion to suppress the evidence, that the arresting officers had either "probable cause" for their acts or *"trustworthy* information" upon which to predicate "reasonable belief * * * that the car (truck) was engaged in the transportation of *contraband."*

The evidence obtained by this search would definitely have been suppressed had the search been made of a building in accordance with Melton v. State, supra. Also, the search under the same facts would definitely have been legal and the evidence would not have been suppressed had the vehicle in question been hauling contraband and the search made on probable cause for this purpose. The question for decision here is whether or not the search was legal and the evidence obtained should be admitted in evidence or suppressed, where the search was made of a vehicle not engaged in hauling contraband and not used for that purpose. The authorities cited would indicate that the right to search vehicles in the state of Florida has not been carried to this extreme and the trend of the opinions of the Supreme Court indicate that the right to make such searches will be restricted instead of liberalized.

The judgment appealed from should be and is hereby reversed.