Tiny McCLAIN, James McClain, Jr., and
Jennifer McClain, Plaintiffs,

v.

Robert L. CROWDER, Sheriff of Martin
County, Florida, in his official capacity,
Deputy Sheriffs Paul Daniel, O'Hara
Mackey, and Kenneth Matlack, individu-
ally and as Deputy Sheriffs of Martin
County, Florida, Defendants,

and.

State of Florida, Intervenor.

No. 92–14125–CIV.

United States District Court,
S.D. Florida.

Jan. 10, 1994.

**898**

E. Kent Mathews, Jensen Beach, FL, for plaintiffs.

Julius F. Parker, Jr., Parker, Skelding, Labasky & Corry, Tallahassee, FL and Joan Fowler, Asst. Atty. Gen., West Palm Beach, FL, for defendants.

## OMNIBUS ORDER

PAINE, District Judge.

This matter comes before the court on the Defendants' Motion for Summary Judgment (DE 5), the Plaintiffs' Motion to Declare Florida Statutes Section 901.19(1) Unconstitutional (DE 10), and the Defendants' Motion for Continuance (DE 34).

## I. BACKGROUND

On December 3, 1991, Deputy Sheriffs Paul Daniel, O'Hara Mackey, and Ken Matlack appeared at the McClain residence, allegedly having received information from a confidential informant that Richard Haston, for whom both felony and misdemeanor warrants were outstanding, was inside that home. The McClain home was not Haston's place of residence.

Jennifer McClain and her father, James "Pete" McClain, Jr., both of whom did reside at that residence, met the deputies at the gate of the chain link fence that surrounds their property. When informed by the deputies of their intent to search for Haston in her residence, Jennifer McClain said that he was not present and she denied the deputies access to her home. Jennifer McClain then entered the house and proceeded to lock the doors.

Deputy Daniel, however, alleges that Pete McClain, a former Deputy Sheriff, consented to the search of his residence. Pete McClain, who has suffered several strokes and is unable to communicate very effectively, claims that he did not give such consent. In any event, Deputy Sheriffs O'Hara and Matlack subsequently entered the McClain residence through the back door and searched for Haston. Jennifer McClain continued to object to the activities of the officers throughout their search. The Deputy Sheriffs searched the McClain residence, and they did not find Haston.

Pete McClain and his wife, Tiny, along with their daughter, Jennifer McClain (collectively the "McClains") thereafter brought suit, under 42 U.S.C. § 1983, against the Sheriff of Martin County, Florida, in his official capacity, and the Deputy Sheriffs who executed the search of their home. The Defendants answered the complaint, and then filed the instant motion for summary judgment. In the summary judgment motion, the Defendants assert that they were justified in entering the McClain residence pursuant to Florida Statute Section 901.19(1) and that they violated no constitutional rights. The McClains, in turn, have moved to declare Section 901.19(1) unconstitutional. The State of Florida has intervened to oppose the McClains' motion. Having reviewed the record, the memoranda of counsel and relevant authorities, the court enters the following order.

## II. DISCUSSION

### A. Summary Judgment Analysis

■ Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). There is no genuine issue for trial where the record could

not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The party seeking summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact in the case. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1368 (11th Cir.1982). In determining whether a movant has met this burden, the court must review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608. "Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all evidence is viewed in the light most favorable to the non-moving party." *Morrison v. Washington County, Alabama,* 700 F.2d 678, 682 (11th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) (citing *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts should be resolved in favor of the non-moving party. *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985). If reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied. *Id.* "When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one." *Carlin Communication, Inc. v. Southern Bell Telephone and Telegraph Co.,* 802 F.2d 1352, 1356 (11th Cir. 1986) (citing *Southway Theatres, Inc. v. Georgia Theatre Co.,* 672 F.2d 485, 495 (5th Cir. Unit B 1982)). Thus, while summary judgment should not be regarded as a disfavored procedural shortcut, *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2554, any doubt as to the existence of a genuine issue of material fact must be resolved against its entry. 10A Charles A. Miller, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2727 at 124 (2d ed. 1983) (citing *Adickes* ).

In this case, the Defendants assert that they were justified in entering the McClain's residence pursuant to Florida Statute Section 901.19(1) and that they violated no constitutional rights. Section 901.-19(1) reads:

> If a peace officer fails to gain admittance after he announced his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, he may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.

Assuming for the moment that Section 901.-19(1) is constitutional, the court still must conclude that the Defendant are not entitled to summary judgment. Section 901.19(1) requires, *inter alia,* that a law enforcement officer "use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be." Jennifer McClain has stated in an affidavit in opposition to the instant motion that a Sheriff Deputy, in the process of entering her home, struck her in the stomach with his flashlight. Although the Defendants deny her statement through their affidavits, such evidence raises a question of fact as to whether the Defendants used "all necessary and reasonable force" in entering the McClain residence. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Thus, the court shall deny the Defendants' motion for summary judgment.

## B. Constitutional Analysis of Section 901.19(1)

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 12 of the Constitution of the State of Florida tracks the language of the Fourth Amendment almost verbatim[1] and notes that "[t]his right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." *Bernie v. State*, 524 So.2d 988, 991 (Fla.1988) ("The language of article I, section 12, clearly indicates an intention to apply to all United States Supreme Court decisions regardless of when they are rendered"); *Thurman v. State*, 116 Fla. 426, 156 So. 484, 487–88 (1934) (observing that this section has the same meaning, and uses almost identically the same language, as the Fourth Amendment).

In the instant motion, the McClains, citing *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), assert that the wording of Section 901.19(1) unconstitutionally authorizes law enforcement officers armed solely with an arrest warrant, and absent exigent circumstances or consent, to use all necessary and reasonable force to enter the house of a third party, not the subject of said warrant, when they reasonably believe that the suspect is inside. In response, the State of Florida argues that this statute, enacted in 1939, has never been found unconstitutional. As the McClains observe, however, research indicates that no court previously has considered this specific constitutional issue. Neither the Defendants nor the State of Florida has attempted to reconcile Section 901.19(1) with *Steagald.*

In *Steagald*, federal agents had an arrest warrant for a federal fugitive, Richard Lyons, and probable cause to believe that Lyons was staying in Gary Steagald's home.

The agents did not have a search warrant for Steagald's house. Solely on the strength of the arrest warrant for Lyons, the agents entered and searched that residence. The officers were unable to find Lyons, but they did find cocaine and other evidence that incriminated the homeowner Steagald. The Supreme Court stated:

> [T]he narrow issue before us is whether an arrest warrant—as opposed to a search warrant—is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances.

*Id.* at 213, 101 S.Ct. at 1648.

The Court distinguished the interests protected by search warrants and arrest warrants and reasoned that the arrest warrant for Lyons "did absolutely nothing to protect [Steagald's] privacy interest in being free from an unreasonable invasion and search of his home." *Id.* at 213, 101 S.Ct. at 1648. The Court further observed that allowing police, acting alone and absent exigent circumstances, to decide when there is sufficient justification for searching a third party's home for the subject of an arrest warrant "would create a significant potential for abuse." *Id.* at 215, 101 S.Ct. at 1649. The Court explained:

> Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances. Moreover, an arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place.

*Id.* (citations omitted). Thus, the Court concluded that, absent exigent circumstances or consent, law enforcement officers could not legally search for the subject of an arrest warrant in the home of a third party, without first obtaining a search warrant. *Id.* at 216, 101 S.Ct. at 1649; *see United States v. De Parias*, 805 F.2d 1447, 1457 (11th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3189, 96

---

**1.** The Florida Constitution adds the right to be free from the unreasonable interception of communications.

L.Ed.2d 678 (1987) (recognizing that "[a]n arrest warrant alone is an insufficient basis for searching a third party's home for those named in the warrant").

As the McClains correctly observe, Section 901.19(1) is contrary to the Supreme Court's holding in *Steagald*. Section 901.19(1) authorizes law enforcement officers to enter a third-party residence based solely upon an arrest warrant. The instant facts illustrate the direct conflict between the state statute and the federal case. Assuming, for purposes of this analysis, that there were no exigent circumstances and that the McClains did not consent to the search of their home,[2] Section 901.19(1) still would recognize the Sheriff Deputies' search to be valid as long as the officers used all necessary and reasonable force to enter the McClain residence and they reasonably believed that Haston was inside. Under *Steagald*, however, the Deputy Sheriffs, absent exigent circumstances or consent, could not legally search for Haston in the McClains' home without first obtaining a search warrant. The unconstitutionally of such a search can be best explained simply by substituting the names of the parties in *Steagald*, 451 U.S. at 213–14, 101 S.Ct. at 1648 (citations omitted), with those in the instant case:

> Thus, whether the arrest warrant issued in this case adequately safeguarded the interests protected by the Fourth Amendment depends upon what the warrant authorized the agents to do. To be sure, the warrant embodied a judicial finding that there was probable cause to believe that [Haston] had committed a felony, and the warrant therefore authorized the officers to seize [Haston]. However, the [Deputy Sheriffs] sought to do more than use the warrant to arrest [Haston] in a public place or in his home; instead, they relied on the warrant as legal authority to enter the home of a third person based on their belief that [Haston] might be a guest there. Regardless of how reasonable this belief might have been, it was never subjected to the detached scrutiny of a judicial officer. Thus, while the warrant in this case may have protected [Haston] from an unreasonable seizure, it did absolutely nothing to protect [the McClains'] privacy interest in being free from an unreasonable invasion and search of [their] home. Instead, [the McClains'] only protection from an illegal entry and search was the [Deputy Sheriffs'] personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant. We see no reason to depart from the settled course when the search of a home is for a person rather than an object.

The undersigned also "see[s] no reason to depart from the settled course," and therefore, this court finds that Section 901.19(1) is unconstitutional under the Fourth Amendment.[3]

**2.** A factual issue remains regarding whether exigent circumstances existed in this case. *See Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). As for the consent issue, even assuming that Pete McClain consented to the search of his home, it is undisputed that Jennifer McClain adamantly objected to the search, including voicing her protest subsequent to her father's alleged consent. Courts have held that even when one party jointly sharing dominion and control over a residence gives consent to a warrantless search, the other party may rescind such consent by expressing her protest and demanding a search warrant. *See, e.g., Lucero v. Donovan*, 354 F.2d 16, 21 (9th Cir.1965) (alleged consent by brother of plaintiff for search of apartment by police officer without warrant was rescinded by protest of plaintiff and her demand for a search warrant); *Smith v. State*, 465 So.2d 603, 604 (Fla. 3d Dist.Ct.App. 1985) (although joint occupants may consent to a search of their premises, where consent is refused by parties against whom the search is directed, any subsequent consent by other joint occupant is invalid); *see also United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (consent to a warrantless search by one who possess common authority or sufficient relationship to the premises is valid as against *absent*, nonconsenting person to whom authority is shared) (emphasis added).

**3.** Notwithstanding their representations to the contrary, *see* DE 34 at 2–3, the Defendants have not raised in their motion for summary judgment the defense of qualified immunity, which protects public officers acting within the scope of their discretionary authority and under clearly established law from insubstantial lawsuits. *Stone v.*

■ In the instant motion, the McClains ask this court to declare Section 901.19(1) both facially unconstitutional and unconstitutional as applied in this case. A facial challenge to a legislative act "is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). The fact that a statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since the Supreme Court has not recognized an "overbreadth" doctrine outside the limits of the First Amendment. *Id.*

■ Section 901.19(1) sets forth the "knock and announce" rule governing official entries for the purpose of making an arrest. *See Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). In *Benefield v. State,* 160 So.2d 706 (Fla.1964), the Supreme Court of Florida examined the statute and explained the historical reasons for a knock and announce rule:

> It is true that the act is ambiguous and poorly drawn, but a reasonable interpretation of it runs like this: When an officer is authorized to make an arrest in any building, he should first approach the entrance to the building. He should then knock on the door and announce his name and authority, sheriff, deputy sheriff, policeman or other legal authority and what his purpose is in being there. If he is admitted and has a warrant, he may proceed to serve it. He is not authorized to be there to make an arrest unless he has a warrant or is authorized to arrest for a felony without a warrant. If he is refused admission and is armed with a warrant or has authority to arrest for a felony without a warrant, he may then break open a door or window to gain admission to the building and make the arrest. If the building happens to be one's home, these requirements should be strictly observed.

Entering one's home without legal authority and neglect to give the occupants notice have been condemned by the law and the common custom of this country and England from time immemorial. It was condemned by the yearbooks of Edward IV, before the discovery of this country by Columbus. Judge Prettyman for the Court of Appeals in *Accarino v. United States,* 85 U.S.App.D.C. 394, 179 F.2d 456, 465, discussed the history and reasons for it. *See also* 22 Mich.L.Rev. 541, 673, 798, "Arrest Without a Warrant," by Wilgus. William Pitt categorized a man's home as his castle. Paraphrasing one of his speeches in which he apostrophized the home, it was said in about this fashion: The poorest pioneer in his log cabin may bid defiance to the forces of the crown. It may be located so far in the backwoods that the sun rises this side of it; it may be unsteady; the roof may leak; the wind may blow though it; the cold may penetrate it and his dog may sleep beneath the front steps, but it is his castle that the king may not enter and his men dare not cross the threshold without his permission.

*Id.* at 709.

The court in *Benefield* then continued to analyze Section 901.19(1) under a number of common law applications:

> As we interpret the common law authorities in relation to § 901.19(1), Florida Statutes, F.S.A., we conclude that even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent peril or bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of

---

*Peacock,* 968 F.2d 1163, 1165 (11th Cir.1992). In light of this court's ruling, the question becomes whether the existence of a *state* statute that conflicts with *federal* constitutional law creates an ambiguity that would permit application

of the qualified immunity defense. *See Muhammad v. Wainwright,* 839 F.2d 1422, 1425 (11th Cir.1987) (if law is not clearly established, defendants are entitled to qualified immunity).

someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted. Time and experience will no doubt suggest other exceptions, but when the facts of this case are measured against the statutory criteria and its exceptions, it is clear that the unannounced entry of the officers in this case violated the statute and vitiated the arrest made pursuant to probable cause without warrant.

*Id.* at 710. *See Van Allen v. State,* 454 So.2d 49, 50–1 (Fla. 4th Dist. Ct.App.1984).

■ Upon examining Section 901.19(1) and the case law interpreting the statute, the court must conclude that the statute is not facially unconstitutional because "circumstances exists under which the Act would be valid." *Salerno,* 481 U.S. at 745, 107 S.Ct. at 2100. For example, a law enforcement officer does not commit a constitutional violation when that officer, armed solely with an arrest warrant, uses all necessary and reasonable force, pursuant to Section 901.19(1), to enter the home of the subject of that warrant when there is reason to believe that the suspect is inside. *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980) (finding that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect *lives* when there is reason to believe the suspect is within") (emphasis added). However, because the statute authorizes a law enforcement officer, armed only with an arrest warrant, to enter "any building or property," including a third-party residence, Section 901.19(1) is unconstitutional as applied under *Steagald* and the facts of this case.

### III. CONCLUSION

In view of all the foregoing, it is hereby ORDERED and ADJUDGED as follows:

(1) the Defendants' Motion for Summary Judgment (DE 5) is DENIED.

(2) the Plaintiffs' Motion to Declare Florida Statutes Section 901.19(1) Unconstitutional (DE 10) is GRANTED in part and DENIED in part. While Section 901.19(1) is not facially unconstitutional, it is unconstitutional

as applied under *Steagald* and the facts of this case.

(3) because "exceptional circumstances" have not been shown, *see* S.D.Fla.L.R. 7.6, the Defendants' Motion for Continuance (DE 34) is DENIED.