62 So.2d 43 (1952)
BORREGO et al.
v.
STATE.
Supreme Court of Florida, en Banc.
May 20, 1952.
On Petition for Clarification June 27, 1952.
Rehearing Denied October 16, 1952.
*44 Talton Branch and John D. Goff, Tampa, for appellants.
Richard W. Ervin, Atty. Gen. and William A. O'Bryan, Asst. Atty. Gen., for appellee.
MATHEWS, Justice.
In this case eleven people were convicted on an information charging that they "did unlawfully and feloniously have in their possession certain tickets in a certain lottery commonly known as bolita and parlay, which said lottery was then and there conducted for money". A motion for new trial was made and denied as to each defendant and each was adjudged guilty and sentence pronounced. All of the defendants appealed.
The prosecuting witness testified that he, with other officers, in possession of a search warrant, went to the house in question; that he went to the back door and knocked on the porch; somebody "hollered," "Come in"; there was a man outside of the house, who later came into the house. As the officer went into the house, he came first to the kitchen, then went through the first door where he saw a dining room, with a big round dining table with some men sitting around and picking up some tickets and money. He told the men he had a search warrant for Rosa Borrego. At the time there were ten people in the house, including Rosa Borrego, and one on the outside. Rosa Borrego was in a bedroom and was sweeping "back behind the bed. The bed was pulled out from the corner and she was sweeping behind the bed."
After the search warrant was read, the officers counted the money on the table, seized some copies of bolita tickets and then arrested all eleven of the parties, including Rosa Borrego, and the unidentified man who was on the outside when the officers arrived but who later came into the house.
There was not one scintilla of evidence to the effect that Rosa Borrego was in possession of any tickets of any kind whatsoever. The only testimony of her activities was that she was in possession of a broom and was sweeping behind a bed. She may have been in bad company like "old Dog Tray", but according to this record, she was not in possession of any lottery tickets. The motion for directed verdict as to her should have been granted.
There is not one word of testimony in the record to identify the man who was on the outside when the officers arrived. There is no testimony that he was ever in possession of any lottery tickets. All eleven persons were convicted, which necessarily included the unidentified person who was on the outside. There was no evidence to sustain a conviction as to him. If the nine persons who were around the *45 table had been sufficiently identified, perhaps the evidence in the record would have been sufficient to sustain a conviction as to them. But inasmuch as the verdict of guilty covers an unidentified person when there is no evidence in the record to sustain a conviction as to such unidentified person, the case must be reversed for a new trial, because of the insufficiency of proof as to identity.
Reversed with directions to dismiss as to Rosa Borrego and grant a new trial as to all other defendants.
SEBRING, C.J., and TERRELL, THOMAS, HOBSON and ROBERTS, JJ., concur.
CHAPMAN, J., dissents.

On Petition for Clarification.
MATHEWS, Justice.
In our opinion filed on May 20, 1952, this cause was reversed for a new trial on the grounds therein stated.
The validity of the search warrant and the evidence secured by the execution of such warrant was presented in the assignments of error, in the briefs and orally argued before the Court. We did not pass upon these questions for the reasons stated in our original opinion.
The State has filed an application for clarification or modification of our original opinion. It has called our attention to the fact that in a re-trial of the cause the same questions as to the legality of a search warrant and of the evidence secured in the execution thereof would again be presented and that if there is any merit in the contention of the appellants with reference to these questions, a re-trial would be useless, futile and expensive.
Proper objections were made to the search warrant and were overruled, and motions to suppress the evidence obtained in the execution of such warrant were denied.
The affidavit for the search warrant after stating that the affiant believed that a certain dwelling house was being used as a gambling house and that there was kept therein certain gambling paraphernalia, stated:
"That the facts tending to establish the grounds for this application and the probable cause of affiant believing that such facts exist are as follows: That affiant, for the past two weeks, in the course of an investigation conducted by him as Deputy Sheriff, has seen a number of persons, both white and colored, known to be bolita peddlers, entering and leaving the house located on said premises, and has learned from the aforesaid investigation that there are within the house aforesaid gambling implements, lottery implements, lottery tickets, lottery tally sheets and records containing the lottery numbers or rights in said building in a lottery for money not yet played and that affiant has information from other persons that unlawful gambling and a lottery is actually being operated within said building". (Italics supplied.)
The affidavit in the case at bar is almost identical with that in the case of White v. State, Fla., 47 So.2d 863, 864. In that case in an opinion by Mr. Justice Chapman, we said:
"The affidavit fails to state facts or sufficient reasons upon which the officer believed, or had reason to believe, that the laws were being violated by the appellant."
In an earlier case of De Lancy v. City of Miami, Fla., 43 So.2d 856, 857, 14 A.L.R.2d 602, the affidavit upon which the search warrant was based was very similar to the affidavit in this case. In an opinion by Mr. Justice Thomas, we said:
"We fail to see how the affidavits now under consideration were any stronger than the one condemned by a unanimous decision of this court in Cooper v. State, 106 Fla. 254, 143 So. 217, 218. Here the affiant placed his belief upon what he had learned from an investigation by someone whose name he did not disclose. In the cited case the affiant represented that his belief was based `"upon information furnished affiant by parties who have *46 knowledge of [a violation] and whom affiant believes to be truthful and reliable."' A comment of the court on that occasion fits as well the situation here: `It will be observed that this language does not state any fact on which such reason or belief is based, but is equivalent only to an allegation "that affiant has reason to believe and does believe, on information and belief."'
"This holding is not one peculiar to this court, but seems harmonious with decisions of a majority of the courts on the subject. For instance, the Supreme Court of the United States announced in Grau v. U.S., 287 U.S. 124, 53 S.Ct. 38, 40, 77 L.Ed. 212, the rule that `A search warrant may issue only upon evidence which would be competent in the trial of the offense before a jury * * * and would lead a man of prudence and caution to believe that the offense has been committed.' Obviously the evidence before the officer who issued the warrants in question would not be competent in a trial and would not convince a prudent man that gambling was being conducted in the places to be searched."
The State relies strongly upon the case of Johnson v. State, 157 Fla. 685, 27 So.2d 276, 278. There is little, if any, similarity between the affidavit in that case and the affidavit in the case at bar. In the last cited case affiant stated that he had conducted an investigation as a deputy sheriff and that he had "seen a number of persons both white and colored purchasing shares or rights in a lottery for money not yet played in said building and that he has also seen, within the past week and in the aforesaid building, persons selling to other persons shares or rights in a lottery for money not yet played and that he has seen on said premises and he has learned from the aforesaid investigation that there are on said premises gambling implements, lottery implements, lottery tickets, lottery tally sheets and records containing the lottery numbers or shares purchased by customers together with the name or the initial of the customer purchasing said lottery number or share and that affiant has information from other persons that unlawful wagering, betting and a lottery for money is actually being conducted within the said building." (Italics supplied.)
There is a vast difference between actually seeing a number of persons in the said building purchasing rights in a lottery for money; seeing on the premises lottery tickets and other gambling implements and actually seeing shares purchased by customers with the name or the initial of the customer purchasing said lottery thereon, and the recitals of the affidavit in the case at bar, which does nothing more than state affiant had made an investigation as deputy sheriff; that for two weeks he has seen persons enter and leave the house, without saying that he saw them buy, sell, or handle, any lottery tickets, or any gambling paraphernalia. He said they were known to be bolita peddlers, but he did not give the source of his information, or whether he had ever seen them buying or selling bolita, or whether his conclusion was based upon hearsay. He said he had learned from his investigation that gambling implements, lottery tickets, etc., were within the house, but he does not say he had seen them or how he learned these things. The statement that "affiant has information from other persons that unlawful gambling and a lottery is actually being operated within said building" is the equivalent of saying that he believes such lottery is actually being operated upon information and belief. (Underscoring supplied.)
The affidavit in this case falls far short of meeting the requirements of Section 22 of the Declaration of Rights of the Constitution of Florida, F.S.A., and the Fourth Amendment to the Constitution of the United States and the rules laid down by this Court in the cases of De Lancy v. City of Miami, supra, and White v. State, supra.
It is more important that the Constitution be upheld and fundamental rights guaranteed by it be protected, than it is for a conviction to be obtained in a particular case with illegal evidence.
In De Lancy v. City of Miami, supra, we said:
"We are not unaware that guilty persons may go free where convincing evidence *47 against them is held inadmissible because obtained by defective search warrants. But our paramount concern is for the guaranty in the organic law against unreasonable searches. We have spoken on this subject, too, in Cooper v. State, supra, where we approved Judge Cooley's comment that `"`It is oftentimes better that crimes should go unpunished than that citizens should be liable to have their premises invaded * * *'"'".
The search warrant in this case was invalid and the evidence secured in its execution was illegal and the motion to suppress the same should have been granted.
SEBRING, C.J., and TERRELL, THOMAS, HOBSON and ROBERTS, JJ., concur.