199 So.2d 324 (1967)
Henry L. CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 6939.
District Court of Appeal of Florida. Second District.
March 17, 1967.
Rehearing Denied May 26, 1967.
*326 I.W. Williams, of Minnis & Williams, St. Petersburg, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Acting Chief Judge.
Henry L. Carter, defendant below, appeals the judgment entered by the Pinellas County Circuit Court upon a jury verdict convicting him of a violation of the lottery laws of Florida.
The information was in two counts, each count charging that defendant did "aid and assist in setting up, promoting and conducting a lottery or lottery drawing for money, commonly known as `cuba' or `bolita', * * *". The difference between the two counts is that in the first count it is alleged the "aiding and assisting" was "by having in his possession numerous lottery tickets and records showing the sales in said lottery * * * ", while the second count alleged that such "aiding and assisting" was "by transmitting lottery tickets and records of sales in said lottery * * *".
We are concerned here with two alleged trial errors urged by defendant, (1) legality of defendant's arrest and the consequent seizure of certain lottery equipment, later admitted into evidence over objection, and (2) prejudicial language of the prosecutor in arguing his case to the jury.

A  Legality of the Arrest Without Warrant.
The importance of the question and the numerous diverse holdings at the appellate level, coupled with the regularity with which the problem increasingly recurs, impels us to specifically spell out the law to hereafter govern, at least in this jurisdiction.
Defendant's home at Alhambra Way South and 22nd Avenue in St. Petersburg *327 was under surveillance by St. Petersburg police officers Petry and Reese from about 1500 feet away[1] on six different occasions in February, 1965, namely, on the 12th, 19th and 26th (Fridays) from about 5 P.M. to 9 P.M., and on the 13th, 20th and 27th (Saturdays) from about 9 A.M. to 10 A.M. On the Friday night vigils they observed some twenty or more vehicles drive up and park to the front or rear of defendant's home while one or more occupants would go into the residence and a few minutes later come out and the car then drive off. On the three Saturday mornings the same thing happened, except that only four or five cars would drive up and park. On each of these six occasions defendant would be observed around his home, "taking care of his property, watering the flowers and grass, * * * working in the back amongst the vegetable  gardening, attending the rest of the shrubbery on the premises", and on one occasion walking across the street to a neighbor's house and shortly returning.
During the surveillance of Saturday the 13th at about 10 A.M., they observed defendant drive a Ford pick-up truck from his home all the way to the B and S service station at 2001 15th Street North in Tampa, where he parked and entered the office area of the building. On Saturday, the 20th, at about the same time, defendant left his home in a GMC truck, after which the officers lost him from view about ten blocks from his residence but observed him again at about 10:40 A.M. in the same GMC truck at the same service station in Tampa, where he entered and returned about ten minutes later. On Saturday, the 27th, defendant again left his home driving the GMC truck and was trailed by the officers to a point near the Howard Frankland bridge between St. Petersburg and Tampa where defendant's truck was stopped by the officers and they thereupon "arrested him for the violation of the gambling laws of the State of Florida". Three carloads of officers converged on the interception of the truck and defendant's arrest. Upon command of the officers, defendant got out of the truck and "was then searched".
The foregoing are the salient facts relied upon to sustain validity of the arrest of defendant. The search of defendant and his truck yielded the incriminating lottery tickets and paraphernalia which constituted the main evidence of the State for conviction. At the time the articles were first offered in evidence, the Court commented:
"I don't know Mr. Muntzing (the Assistant State Attorney). It seems to me there are some loopholes in your proffer. * * * Here is the crux of this witness' (officer Reese's) testimony: `I had reason to believe the gambling laws of the State of Florida were being violated' * * * Mr. Muntzing, I am going to admit the evidence at the present time before the jury subject to your establishing the basis for the witness' belief and the relevancy of the contents of the subject of the evidence itself."
The only additional evidence the State thereafter offered to establish "the basis for the witness' belief" that the "gambling laws * * * were being violated" was the testimony of officer Reese to the effect that soon after the arrest on the highway he "asked the defendant if this was all the bolita in the truck. He (Carter) stated that this was all he knew about"; also that "[i]n route to the station while he (Carter) was a passenger in the vehicle operated by me, I asked him if the bolita was his bolita. He stated that he did not write bolita, that he just takes it to Tampa." The prosecutor then announced: "[n]ow, may it please the Court, that is the extent of the State's proffer in this regard."[2] The physical evidence *328 was thus admitted over defendant's objection.
The two statements of the defendant to officer Reese, the one made at the scene about five minutes after the arrest and the other made in the car while taking him to the station, undoubtedly violated the ban upon such type of testimony under the recent opinion of this Court in Williams v. State, Fla.App. 1966, 188 So.2d 320. But apart from the tainted character of the testimony, such statements could not be utilized to bolster the legal basis for the prior arrest and search without a warrant. The defendant was already in custody upon the specific charge of violating "the gambling laws" of the State, and whatever may have transpired thereafter, either in the form of incriminating statements by the defendant or affirmative evidence subsequently discovered, could not be considered as support for the officer's right to arrest at the time the arrest was made. The legality of the arrest must stand or fall upon the facts and circumstances then existing. Collins v. State, Fla. 1953, 65 So.2d 61; Urso v. State, Fla.App. 1961, 134 So.2d 810; 3 Fla.Jur., Arrest, § 21; 29 Fla.Jur., Search and Seizure, § 13.
The Florida Statutes provide the basic essentials for an arrest without a warrant in F.S. Sec. 901.15 F.S.A., which reads:
"A peace officer may without warrant arrest a person:
(1) When the person to be arrested has committed a felony or misdemeanor or violation of a municipal ordinance in his presence. In the case of such arrest for a misdemeanor or violation of a municipal ordinance, the arrest shall be made immediately or on fresh pursuit.
(2) When a felony has in fact been committed, and he has reasonable ground to believe that the person to be arrested has committed it.
(3) When he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it.
(4) When a warrant has been issued charging any criminal offense and has been placed in the hands of any peace officer for execution."
In Paula v. State, Fla.App. 1966, 188 So.2d 388, this Court said:
"`Probable cause' is the same, whether it is the basis of an affidavit for a search warrant or whether as the basis for a search without a warrant; and as to what qualifies as `probable cause' in either event has been aptly expressed by Judge Kanner of this Court in McCain v. State, Fla.App. 1963, 151 So.2d 841, as follows (text 844):
`In dealing with "probable cause" for search and seizure without a warrant, a court deals with probabilities which are not technical but which are factual and practical considerations of every day life upon which reasonable and prudent men act and not legal technicians. The essence of "probable cause" is a reasonable ground for belief of guilt; and the court in determining whether there was probable cause to make a search without a warrant must first determine sufficiency of knowledge by the searching officer by comparison to what a reasonable man, knowing all the facts which the searching officer knew, would have believed under all of the circumstances. Gispert v. State, Fla.App. 1960, 118 So.2d 596, cert. denied, Fla. 1960, 122 So.2d 782.'"
In Casso v. State, Fla.App. 1966, 182 So.2d 252, this Court upheld legality of an arrest without a warrant under the facts *329 therein found to exist, and we laid down the rule as follows (text 182 So.2d 257):
"* * * [t]he arrest, with its consequent search and seizure, was legal. The arrest of suspected felons without a warrant is justified, and evidence obtained by search of their persons or effects upon the arrest, will not be suppressed, where the arresting officers had probable cause, in view of their prior investigation, to believe that such persons were then engaged in violating the law. And in determining whether the officers had such probable cause to believe that a felony was being committed so as to justify the arrest without warrant, sufficiency of the known facts on the part of the officers must be determined, not by an analysis of the effect of each known circumstance in isolation, but by a conclusion as to what a reasonable man, knowing all the facts which the officers knew from their prior investigation, would have believed under all the circumstances. Rogers v. State, 1947, 158 Fla. 582, 790, 30 So.2d 625.
* * * * * *
As an incident to an arrest made under these conditions, the arresting officer has the power, indeed it is his duty, to search the person so arrested and to seize anything found on his person or in his possession or under his control tending to show that such person is guilty of a violation of the law. Brown v. State, Fla. 1950, 46 So.2d 479."[3] (Emphasis supplied.)
The very valuable work in two volumes entitled "Searches, Seizures and Immunities" by Hon. Joseph A. Varon, an eminent Florida authority on the subject, is illuminating. Beginning on page 75, Section 3, in Volume 1, is the following:
"A valid arrest must be effected before a prosecution official will be permitted to introduce incriminating evidence against an accused charged with a crime, where such evidence was procured at the the time of the arrest. If the arrest is proper, a search and seizure of the arrestee is justified and all evidence, admissions and implications that lawfully ensue by reason thereof may be properly presented to a court and jury for consideration. On the other hand, if there was no valid arrest made, the accused may challenge in court all the irregularities that flow from such improper arrest.
* * * * * *
`Probable cause' therefore furnishes the distinction between a legal, or illegal search and seizure. This elusive term has been the basis of considerable controversy between the courts, law enforcement officers, defense counsel and accused persons, and it becomes imperative that we define what constitutes `probable cause.'
* * * * * *
The term `probable cause' as used in the Fourth Amendment and the expression `reasonable grounds' are concepts having virtually the same meaning, and these two terms and their definition constitute the crucial test of the validity of an arrest without warrant.
We therefore continue our explanation of `probable cause' which has been defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.

*330 The courts, in the determination of the existence of probable cause, are not concerned with the question of the guilt or innocence of the accused, but whether or not the arresting officer has reasonable ground for the belief that prompted his action.
`Probable cause' or `reasonable grounds,' justifying an arrest without warrant, is determined by the factual and practical considerations of everyday life on which reasonable and prudent men act; where the facts and circumstances are within the arresting officer's knowledge and of which he has reasonably trustworthy information sufficient to justify a man of reasonable caution in the belief that an offense has been, or is being committed.

* * * * * *
In order to establish sufficient probable cause to justify an arrest there must be a genuine and bona fide belief and reasonable grounds for it, but when there is an opportunity for the peace officer to make due and proper inquiry and investigation, this should be done. Good faith on the part of the arresting officer is not enough." (Emphasis supplied).
Copious authorities from many jurisdictions, including Florida, are cited by Mr. Varon in support of his text aforesaid.
The U.S. Supreme Court cases of Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, and Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, are undoubtedly today the leading cases on the subject. The facts upon which Henry was arrested without warrant are delineated in the opinion, but for brevity will not be here repeated. Suffice to say, there were far more grounds for "reasonable belief" that a felony had been or was being committed there than here. After narrating such facts, Justice Douglas dwelt briefly upon the ancient conditions in Britain before the doctrine of "probable cause" was evolved, in the following language:
"The requirement of probable cause has roots that are deep in our history. The general warrant, in which the name of the person to be arrested was left blank, and the writs of assistance, against which James Otis inveighed, both perpetuated the oppressive practice of allowing the police to arrest and search on suspicion. Police control took the place of judicial control, since no showing of `probable cause' before a magistrate was required." (Emphasis supplied.)
The opinion in Henry then traces the changing tide of sentiment in the years of our founding fathers beginning with provisions of the Virginia, the Maryland and the North Carolina Declarations of Rights, and the Pennsylvania and Massachusetts Constitutions, all of which contained language doing away with "general warrants" and erecting stringent requirements for warrants of arrest. The opinion then observes:
"That philosophy later was reflected in the Fourth Amendment. And as the early American decisions both before and immediately after its adoption show, common rumor or report, suspicion, or even `strong reason to suspect' was not adequate to support a warrant for arrest. And that principle has survived to this day." (Cases cited.)
The opinion then lays down the guide lines for an arrest sans warrant in the following language:
"Evidence required to establish guilt is not necessary. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. On the other hand, good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. *331 Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035. And see Director General of Railroads v. Kastenbaum, 263 U.S. 25, 28, 44 S.Ct. 52, 53, 68 L.Ed. 146; United States v. Di Re, supra, 332 U.S. 581 592, 68 S.Ct. [222] 227 [92 L.Ed. 210]; Giordenello v. United States, supra, 357 U.S. 480 486, 78 S.Ct. [1245] 1250 [2 L.Ed.2d 1503]. It is important, we think, that this requirement be strictly enforced, for the standard set by the Constitution protects both the officer and the citizen. If the officer acts with probable cause, he is protected even though it turns out that the citizen is innocent. Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543. And while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause. Carroll v. United States, supra, 267 U.S. at pages 155-156, 45 S.Ct. at pages 285-286. This immunity of officers cannot fairly be enlarged without jeopardizing the privacy or security of the citizen. We turn then to the question whether prudent men in the shoes of these officers (Brinegar v. United States, supra, 338 U.S. at page 175, 69 S.Ct. at page 1310) would have seen enough to permit them to believe that petitioner was violating or had violated the law." (Emphasis supplied.)
In Wong Sun, Mr. Justice Brennan stated the rule more precisely as follows (text 83 S.Ct. 413):
"It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, see Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause  evidence which would `warrant a man of reasonable caution in the belief' that a felony has been committed, Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543  must be measured by the facts of the particular case. The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would `leave law-abiding citizens at the mercy of the officers' whim or caprice.' Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879.
Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed. The threshold question in this case, therefore, is whether the officers could, on the information which impelled them to act, have procured a warrant for the arrest of Toy. We think that no warrant would have issued on evidence then available." (Emphasis supplied.)
Our Supreme Court has also passed upon the question in several cases. The sufficiency of the officer's knowledge must be determined "not by an analysis of the effect of each known circumstance in isolation, but by a conclusion as to what a reasonable man, knowing all the facts which the [officer] knew, would have believed under the circumstances." Diaz v. State, Fla. 1949, 43 So.2d 13. The right of a person to be secure from an illegal search and seizure and to be insulated from giving evidence against himself "is inalienable and must be protected at the risk that an individual criminal may go without punishment." Collins v. State, Fla.App. 1962, 143 So.2d 700. See also DeLancy v. City of Miami, Fla. 1950, 43 So.2d 856, 14 A.L.R.2d 602; Borrego v. State, Fla. 1952, 62 So.2d 43.
We revert now to the facts in the case sub judice to determine whether the officers as prudent men, at the time the *332 arrest was made on the highway, had "probable cause" to make a valid arrest without a warrant; assuming of course that the officers had within their knowledge only the facts adduced in evidence and contained in the record before us. Henry v. United States, supra. We hold the facts were not sufficient, and also that the officers should have first procured a warrant.
In essence, all the officers knew (as distinguished from suspected) was that on three Fridays during about four hours each evening and on three Saturdays during about two hours each morning, a number of cars drove up in front of defendant's residence and parked while one or more of the occupants went inside and after five or ten minutes came out and the cars drove away; coupled with the additional fact that on two of the Saturday mornings defendant drove a truck to a gasoline filling station in Tampa.
What the officers, from their vantage point over a quarter-mile away, did not know was the identity of any one of the cars that parked or any one of the persons who went into the house, or the purpose or upon what mission any of the cars and occupants came there. Not a person was observed carrying anything into the house or bringing anything out. The officers did not know from where any of the cars had arrived or where they were destined when they left. Defendant never spoke to a single one of the visitors nor they to him and there was no discernible connection or association between them. The officers did not know who owned the building; whether it was a mansion or a hut; whether defendant was the "lord of the manor" or merely rented a room; whether the building was primarily a commercial building or partly so; who else or how many other people lived there or who they were, or whether anyone else lived there at all; what defendant's business or occupation was; or what his background or reputation was or had been. All the officers ever observed regarding defendant's habits was that he was engaged in the most peaceful and law-abiding activities known to man, tending his flower and vegetable garden. As for the defendant driving to a filling station in Tampa, suffice to say it is not yet unusual for citizens to drive to a gasoline service station on Saturday mornings or to drive on weekends to and fro between Pinellas and Hillsborough counties. In fact, several ultra-modern highways, bridges, and causeways have been constructed for just such purpose. And lastly, the officers knew nothing derogatory about the B and S service station in Tampa.
Without belaboring the issue any further, it is clear that the three carloads of officers on the morning of Saturday, February 27th, had only the barest suspicion that defendant was transporting lottery paraphernalia in his truck at the time they stopped and arrested him. Certainly they did not have sufficient facts within their knowledge that would equate an arrest warrant.
And that brings us to the proposition upon which this Court is now at long last impelled to take a firm stand. The officers had the premises under surveillance for more than two weeks and there was no evidence that defendant was planning to abscond or to leave the jurisdiction; in fact, all the evidence is to the contrary. Surely within such time the officers could have applied to a judicial magistrate, and if the magistrate had determined in his discretion that such evidence was sufficient he could have issued his arrest warrant or search warrant for the premises.
Section 22 of the Declaration of Rights, Constitution of Florida, F.S.A., reads as follows:
"§ 22. Searches and seizures; warrants
Sec. 22. The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places *333 to be searched and the person or persons, and thing or things to be seized."[4]
Pursuant to the foregoing organic provision, the Florida Statutes provide elaborate mechanics for issuance of search warrants. F.S. Section 933.01 F.S.A., authorizes a search warrant to be issued by "any judge", which includes a Circuit Judge, Criminal Court of Record Judge, County Judge, Justice of the Peace, committing magistrate within his limited jurisdiction, or a judge of any Court of Record. F.S. Section 933.02 F.S.A. provides the grounds upon which such search warrant may be issued, which grounds must be established by sworn affidavits. These grounds are: (1) when the property has been stolen or embezzled; (2) when the property has been used in commission of a crime; (3) when the property is being held in violation of liquor laws, fish and game laws, or the laws relative to food and drug; and (4) when the laws relative to cruelty to animals are being violated in any building or place. F.S. Section 933.04 F.S.A. is in statute form identical with section 22 of the Declaration of Rights, supra. F.S. Section 933.05 F.S.A. prohibits issuance of a search warrant "except upon probable cause supported by affidavit or affidavits, naming or describing the person, place or thing to be searched and particularly describing the property or thing to be seized"; also prohibits issuance of such warrants in blank and requires such warrants to be returned "within ten days after issuance thereof". F.S. Section 933.06 F.S.A. requires sworn affidavits and possibly "further testimony" tending to "establish the grounds of the application or probable cause for believing that they exist" to the judge or magistrate before the warrant is issued. F.S. Section 933.07 F.S.A. fixes the judicial duty upon the judge or magistrate to examine the application "and proofs submitted" and to be satisfied that "probable cause exists for the issuing of the search warrant" before it is issued. F.S. Section 933.08 F.S.A. limits the service of such search warrants to the specific officers to whom directed. F.S. Sections 933.09 F.S.A. to 933.15 F.S.A. have to do with execution of the warrants and returns made thereon.
It has been uniformly held that these constitutional and statutory provisions regulating use of search warrants must be strictly construed. State ex rel. Wilson v. Quigg, 1944, 154 Fla. 348, 17 So.2d 697; Leveson v. State, Fla.App. 1962, 147 So.2d 524. The statutory provisions must be rigidly followed and cannot in any case be extended or enlarged beyond the permissive provisions; as for example, only state court judges specifically mentioned in F.S. Section 933.01, F.S.A., supra, which excludes municipal judges, are empowered to issue the warrants.[5] In Creech v. United States, C.C.A.Fla. 1938, 97 F.2d 390, the Federal appellate Court in a Florida case held that "[t]he office of a search warrant is to authorize that which legally could not have been done without its issuance" and authorizes no more than is expressed in or necessarily implied from the language used. And in Walker v. United States, C.C.A.Fla. 1942, 125 F.2d 395, the same Federal appellate Court in another case from Florida held that "where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his peril in acting without a warrant unless he can show the court probable cause", also that "[i]f the securing of a search warrant is reasonably practicable, it must be used * * *."
*334 The Florida Supreme Court is committed to the doctrine that "[a]n officer without a search warrant, or warrant of arrest, has no right to stop any one on the public highway, particularly in the nighttime, and demand that he surrender what he has in his possession, or take it from him without his consent"; and that "[t]he oath of an officer to support, protect, and defend the Constitution precludes his seizing property in violation of" Section 22 of the Florida Declaration of Rights. Tillman v. State, 1921, 81 Fla. 558, 88 So. 377; Kersey v. State, Fla. 1952, 58 So.2d 155. The late Justice T. Frank Hobson, in Byrd v. State, Fla. 1955, 80 So.2d 694, and Mr. Justice Thomas in Collins v. State, Fla. 1953, 65 So.2d 61, collaborated in holding that "[p]utting together the decisions of the Supreme Court of the United States and the decisions of this court, which we think are harmonious, we reach the conclusion that it is safer procedure to secure a search warrant preliminary to stopping a motorist and searching his car * * *".
We think the time has come when it is not only "safer procedure" but it should be "required procedure" for an officer to comply with the Constitutional and statutory provisions before quoted and Court decisions construing them before making a search; provided, always, that he has reasonable opportunity, both in point of time and circumstances, to do so. We therefore hold that where an arrest or search is made by an officer without a warrant, the State must be prepared to show, not only the factual existence at such time of probable cause,[6] but also that the officer or officers had no reasonable opportunity to previously apply for and be issued an arrest or search warrant; otherwise the evidence as to the fruits of the search goes out.
This is no novel or drastic, much less alarming, doctrine to lay down. It is simply infusing vitality and substance into what the letter and spirit of the law has always required. The Courts, both Federal and State, have long been admonishing police officers to obtain warrants before searching, whenever and wherever practicable.
Bear in mind, we say "no reasonable opportunity to previously apply" for such warrant. This still leaves the way open for an arrest or search absent a warrant where the exigencies of the situation render it impossible or reasonably impracticable to apply for the warrant. If such procedure of requiring a warrant is followed, the officer runs no risk of violating a citizen's constitutional rights if the evidence is insufficient; and if sufficient the officer can still make his arrest and search but with more prestigious authority.
Actually, this is why the Constitution and statutes set up the elaborate legal processes for a search or arrest warrant to be issued, by requiring the facts to be presented in writing and under oath, and then for a judicial officer to exercise the judicial function of determining as a judicial matter whether sufficient probable cause exists for a warrant to issue. For when a police officer proceeds independently to make an arrest or search without a warrant, having previous opportunity to procure it, he is simply arrogating to himself the functions and judicial determination that should properly be made only by a trained magistrate. The warrant is his legal "open sesame" to invade Constitutional rights. He should be armed with it where reasonably possible.
As said in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436:
"The point of the Fourth Amendment (unreasonable search and seizure), which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its *335 protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. * * * When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." (Emphasis supplied.)
And in United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775, the same high Court said:
"* * * the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests. Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime."
In Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503, the Court said:
"The language of the Fourth Amendment, that `* * * no Warrants shall issue, but upon probable cause, * * *' of course applies to arrest as well as search warrants." (Emphasis supplied.)
See also Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and the recently published text book, George on "Constitutional Limitations on Evidence in Criminal Cases", page 323.
The admission of the physical objects into evidence in the instant case, over objection of defendant, was prejudicial error.

B  Argument to the Jury
In his argument to the jury, Assistant State Attorney Muntzing told the jury the following:
"I want to point this out to you, however, that the defendant in every criminal case has a constitutional right not to testify and this is a right that he has and it cannot be held against him because of this constitutional right, and I want to state if the defendant does object to not having this evidence, they have the same subpoena power as does the State. They can come in here too  ".
At this point defense counsel asked for a mistrial on the ground that the prosecutor had no right, even indirectly, to make any comment or allusion that might reasonably call attention of the jury to the fact that defendant had not testified in his own behalf. After first indicating agreement with defense counsel, the trial Judge finally decided to overrule the motion, but said to defense counsel: "if you suffer an adverse verdict I will hear you on a motion for new trial". In due course motion for new trial was filed, incorporating the ground of the jury comment aforesaid. Argument was held on the motion but the order denying same was not filed until eleven days after notice of appeal was filed in this Court. However, whether the motion for new trial is treated as having been denied or abandoned, the point was adequately preserved during the proceedings at the trial.
In the light of numerous decisions of the Florida courts in the fairly recent past, we must hold the comment of the prosecutor to have been prejudicial. In Singleton v. State, Fla.App. 1966, 183 So.2d 245, the defendant had elected not to testify, and in the argument to the jury the Assistant State Attorney used the following language: "And I call your attention to the manner in which the Defendants have testified in refuting their (the State's witnesses') testimony." In discussing the question, this Court took occasion to review numerous authorities on the subject, and then held the language of the prosecutor to be fatal error.
In the argument objected to here, the attention of the jury was directly drawn to *336 the fact that defendant had a constitutional right not to testify. This in turn unfailingly focused attention of the jury upon the fact that defendant had not testified in his own behalf. This comes well within the orbit proscribed by the many cases cited in Singleton, and reversible error ensued as a necessary consequence.
The judgment appealed from is thereupon reversed.
Reversed.
HOBSON, J., concurs.
STEPHENSON, GUNTER, Associate Judge, concurs in conclusion only.

ON PETITION FOR REHEARING
PER CURIAM.
The attorneys for appellee have filed in this cause a Petition for Rehearing and in the alternative to certify the cause to the Supreme Court of Florida, pursuant to Florida Appellate Rules 2.1, subd. a(5) (b) and 4.6, 31 F.S.A., and upon consideration it is
Ordered that the petition be and the same is hereby denied.
PIERCE, Acting C.J., and HOBSON, J., concur.
STEPHENSON, GUNTER, Associate Judge, concurs in denial of certification but would grant rehearing.
STEPHENSON, GUNTER, Associate Judge (dissenting on rehearing).
The Petition for Rehearing filed by the State of Florida requests the Court to recede from the following pronouncement in its opinion:
"We think the time has come when it is not only `safer procedure' but it should be `required procedure' for an officer to comply with the Constitutional and statutory provisions before quoted and Court decisions construing them before making a search; provided, always, that he has reasonable opportunity, both in point of time and circumstances, to do so. We therefore hold that where an arrest or search is made by an officer without a warrant, the State must be prepared to show, not only the factual existence at such time of probable cause, but also that the officer or officers had no reasonable opportunity to previously apply for and be issued an arrest or search warrant; otherwise the evidence as to the fruits of the search goes out." (Emphasis by the court.)
The Fourth Amendment to the Constitution of the United States and Section 22, of the Declaration of Rights of the Florida Constitution, F.S.A., secures the people against unreasonable searches and seizures. (Emphasis supplied.)
This Amendment and Declaration of Rights have had judicial construction by every State Court of last resort, and by the United States Supreme Court in decisions that are too numerous to count. However, none of them has adopted the test laid down by the distinguished judges who deny the Petition for Rehearing.
In Gaskins v. State, Fla., 89 So.2d 867, Justice Thornal stated,
"We have held numerous times that only unreasonable searches and seizures are condemned by the Constitution." (Emphasis supplied.)
I would, therefore, grant the Petition for Rehearing by striking from the original opinion the following language:
"We therefore hold that where an arrest or search is made by an officer without a warrant, the State must be prepared to show, not only the factual existence at such time of probable cause, but also that *337 the officer or officers had no reasonable opportunity to previously apply for and be issued an arrest or search warrant; otherwise the evidence as to the fruits of the search goes out."
NOTES
[1] This is over a quarter-mile and the officers had to use "7 by 50 binoculars", especially "coated" and "tinted" for "night work".
[2] The only remaining evidence adduced to establish "the relevancy of the contents of the subject of the evidence itself" was the pro forma testimony identifying the articles as lottery paraphernalia by the police "experts".
[3] The Casso case relied heavily upon: (1) the "fresh pursuit" provision of F.S. Sec. 901.15(1) F.S.A.; (2) the fact that the defendants were actually "in flight" to evade the processes of the law; and (3) the further fact of the impracticability then existing of procuring an arrest or search warrant before the suspects absconded.
[4] The above quoted provision is in the present Constitution of 1885, but it was included in all prior State Constitutions: Const. 1838, art. 1, § 7; Const. 1861, art. 1, § 7; Const. 1865, art. 1, § 7, Const. 1868, Decl. of Rights, § 19. It also appears without substantial difference as Amendment IV in the Constitution of the United States.
[5] Special acts may be passed by the legislature authorizing designated municipal officers to issue search warrants within the boundaries of such municipality, such as Tampa, see Farragut v. City of Tampa, 1945, 156 Fla. 107, 22 So.2d 645; and Lakeland, see Joyner v. City of Lakeland, Fla. 1956, 90 So.2d 118.
[6] This of course does not include arrests made by a peace officer under sub-sections (1) and (4) of F.S. Sec. 901.15 F.S.A. see supra, page 328.