277 So.2d 778 (1973)
STATE of Florida, Petitioner,
v.
Pedro Antonio PEREZ, Respondent.
No. 42981.
Supreme Court of Florida.
May 16, 1973.
*779 Robert L. Shevin, Atty, Gen., and Reeves Bowen, Asst. Atty. Gen., for petitioner.
W. DeHart Ayala, Jr., of Few & Ayala, Tampa, for respondent.
ROBERTS, Justice.
This cause is before this Court on conflict certiorari granted to review the decition of the District Court of Appeal, Second District, in Perez v. State of Florida, reported at 267 So.2d 33 (Fla.App. 1972) which purportedly conflicts with Falcon v. State, 226 So.2d 399 (Fla. 1969). We have considered the case cited for conflict and have determined that we have jurisdiction pursuant to Florida Constitution, Article V, § 3(b)(3), F.S.A.
Respondent was charged by information with the possession of lottery tickets. Before trial respondent filed a motion to quash and suppress evidence which included lottery tickets seized in his home. This motion was denied and subsequently respondent was found guilty as charged by a jury verdict. His conviction by the Criminal Court of Record was affirmed by the Circuit Court of Hillsborough County which found that there was ample evidence in the record to justify conviction of respondent, that the officers had probable cause to make an arrest (on another charge) without a warrant and the lottery materials were in plain view of the officers who were engaged in performance of their lawful duties, and that if there was any search, it was incidental to a valid arrest. Upon petition for writ of certiorari to the District Court of Appeal, Second District, the District Court quashed the order of the Circuit Court and remanded the cause with directions that respondent be discharged. The District Court of Appeal determined that where an officer who knew the circumstances on which he intended to arrest the defendant for several days for receiving stolen property waited outside defendant's home until the lights went out and then at nearly midnight, went to his door, knocked on it and placed him under arrest, such arrest was unlawful and lottery tickets seen in defendant's home by police officers who had unlawfully entered same and which formed the basis of the charge on which defendant was convicted should have been suppressed. It is this decision which petitioner seeks this Court to review upon the grounds of conflict certiorari.
Pertinent to the cause presently before us are the following facts. Accompanied by several other police officers, Detective Napoli went to the house of respondent *780 Perez shortly after midnight the night of March 22, 1967. He was prompted to go there by information to the effect that respondent had stolen property that came from a burglary Napoli was investigating, a 23-inch RCA color television. This information was received some two or three days previously from a confidential informer who Napoli had known for several years and who had on previous occasions given very reliable information. Napoli did not obtain an arrest warrant or a search warrant before going to respondent's house. The officers knocked on the door and identified themselves to respondent and immediately arrested respondent on probable cause telling him he was being arrested for possession of stolen property, to-wit: the RCA television which Napoli could visibly see from the front porch when respondent opened the door.
After having invited the officers into his house, respondent turned on the lights in the living room and dining room. While one of the officers read respondent his constitutional rights, Napoli along with several officers, saw bolita and gambling paraphernalia on the dining room table which was located approximately five feet from the television.
For the purpose of deciding this case, the District Court of Appeal credited the trial court's finding that the officers had probable cause to make an arrest without a warrant, but reversed respondent's conviction upon the admitted fact that the officers had ample time to obtain a warrant and for the additional following reason,
"... . . We simply cannot accept the blanket assertion that probable cause to arrest a person for felony justifies intrusion into his home during the nighttime two or three days after the probable cause arose, at least one day after a warrant was sought unsuccessfully, and in the absence of any single fact showing need for action before the facts could be submitted to a magistrate. If the Fourth Amendment means anything, it must protect citizens against the sort of intrusion shown here. Should our Supreme Court review this case, we would hope that their expression in Falcon would be limited to exclude arrests in dwelling houses in the nighttime."
By imposing additional requirements to those set out in Chapter 901, Florida Statutes, F.S.A., the instant decision of the District Court is in direct conflict with our holding in Falcon v. State, 226 So.2d 399, wherein appellant contended that the trial court erred in overruling the motion to suppress evidence taken from him without a warrant and cited Carter v. State, Fla. App., 199 So.2d 324, in support of his contention. In Falcon v. State, supra, this Court quoted the following language from the Carter opinion.
"We therefore hold that where an arrest or search is made by an officer without a warrant, the State must be prepared to show, not only the factual existence at such time of probable cause, but also that the officer or officers had no reasonable opportunity to previously apply for and be issued an arrest or search warrant; otherwise the evidence as to the fruits of the search goes out."
and then went on to overrule the doctrine explicated in Carter, by stating,
"To the extent that Carter purports to impose requirements other than those set out in Chapter 901, Florida Statutes, F.S.A., for a valid arrest without a warrant, it is erroneous. A similar contention has been rejected by the Federal Courts.[2]"
[2] United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Odom v. United States, 403 F.2d 45 (C.C.A. 5th 1968).
This Court thus held that Chapter 901, Florida statutes, F.S.A., lays down the only requirements for a valid arrest without a warrant.
*781 Section 901.15, Florida Statutes, F.S.A., provides,
"When arrest by officer without warrant is lawful.  A peace officer may arrest a person without a warrant when:
(1) The person has committed a felony or misdemeanor or violated a municipal ordinance in the presence of the officer. Arrest for the Commission of a misdemeanor or violation of a municipal ordinance shall be made immediately or in fresh pursuit.
(2) A felony has been committed and he reasonably believes that the person committed it.
(3) He reasonably believes that a felony has been or is being committed and reasonably believes that the person to be arrested has committed or is committing it.
(4) A warrant for the arrest has been issued and is held by another peace officer for execution."
and Section 901.17 provides,
"Method of arrest by officer without warrant.  A peace officer making an arrest without a warrant shall inform the person to be arrested of his authority and the cause of arrest except when the person flees or forcibly resists before the officer has an opportunity to inform him or when giving the information will imperil the arrest."
Applying the principles announced in Falcon, the District Court of Appeal, Third District, declared in Reis v. State, 248 So.2d 666 (Fla.App. 1971) cert. den. 252 So.2d 798 (Fla. 1971), that the absence of an arrest warrant does not necessarily invalidate an arrest based on reasonable grounds to believe that a felony has been committed even though there may have been sufficient time to have obtained an arrest warrant.
In the instant cause, there is no question that the arresting officers had probable cause to make a valid arrest. Probable cause with reference to a warrantless arrest and subsequent search and seizure of defendant's person and his automobile incident to the arrest, was recently discussed by the Supreme Court of the United States in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) wherein that court succinctly stated,
"Probable cause to arrest depends `upon whether, at the moment the arrest was made ... the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In the present case the policeman found Williams in possession of a gun in precisely the place predicted by the informant. This tended to corroborate the reliability of the informant's further report of narcotics, and together with the surrounding circumstances certainly suggested no lawful explanation for possession of the gun. Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. See Draper v. United States, 358 U.S. 307, 311-312, 79 S.Ct. 329, 331-332, 3 L.Ed.2d 327 (1959). Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action:
`In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)."
Section 901.15, Florida Statutes, F.S.A., does not say that the arrest thereby authorized cannot be made in the arrested person's *782 home in the nighttime without a warrant if the officer had opportunity to obtain a warrant.
The Supreme Court of the United States has opined that absence of a warrant of arrest, even though there was sufficient time to obtain one, does not destroy the validity of an arrest. Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).
We recognize that the Supreme Court of the United States in the majority opinion written in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), in an attempt to refute Justice White's dissent therein did discuss as obiter dicta, the necessity for warrants in general both in the case of arrests and in the case of search and seizure. However, in Coolidge, there was no question as to the validity of the arrest of defendant in his home on the charge of murder, but rather the case turned upon whether there had been a lawful search and seizure of petitioner's automobile since the warrant for the search and seizure of his automobile did not satisfy the requirements of the Fourth Amendment  whether a warrantless search was justifiable under the given circumstances of the case. That court explicated that the basic constitutional rule is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment  subject only to a few specifically established and well-delineated exceptions [citing Katz v. United States, 389 U.S. 347, at 357, 88 S.Ct. 507, 19 L.Ed.2d 576]. The exceptions are `jealously and carefully drawn' and there must be `a showing by those who seek exemption ... that the exigencies of the situation made that course imperative.'" Considering the three theories proposed by the state to bring the search of the automobile within one or another of the exceptions to the warrant requirement, the court discounted all three theories and found that the seizure of the car in the driveway could not be justified as incidental to the arrest which took place inside the house, that the argument of the state to the effect that police may make a warrantless search of an automobile whenever they have probable cause to do so was without merit since the police for some time had known of the probable role of the car, the petitioner had had ample time to destroy incriminating evidence, the house was guarded, and petitioner had no access to the car  hence, there were no exigent circumstances justifying a warrantless search. As to the third theory of the state that the car itself was an instrumentality of the crime and as such might be seized because it was in plain view, the court responded that under the circumstances present in Coolidge, the plain view exception could not justify the seizure of defendant's automobile. With regard to this position by the state, the court explicated, inter alia,
"The police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon Coolidge's property. And this is not a case involving contraband or stolen goods or objects dangerous in themselves."
Subsequent to deciding the issue before it as above explained, the majority in an attempt to refute Justice White's dissent went into a lengthy discourse on warrants in general. It is in this section of the opinion that the court discussed warrantless arrests. Justice Harlan points out in his concurring opinion that the court again leaves open the issue of a warrantless entry into a man's home to arrest him on probable cause.
The Supreme Court posited a question similar to the one before us in the following language, at 480, 91 S.Ct. at 2045,
"Indeed, if Mr. Justice White is correct that it has generally been assumed that the Fourth Amendment is not violated by *783 the warrantless entry of a man's house for purposes of arrest, it might be wise to re-examine the assumption. Such a re-examination `would confront us with a grave constitutional question, namely, whether the forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, under circumstances where no reason appears why an arrest warrant could not have been sought, is consistent with the Fourth Amendment.' Jones v. United States, 357 U.S., at 499-500, 78 S.Ct. [1253], at 1257 [2 L.Ed.2d 1514]." (Emphasis supplied.)
and replied to this proposition as follows,
"None of the cases cited by Mr. Justice White disposes of this `grave constitutional question.' The case of Warden v. Hayden [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782], supra, where the Court elaborated a `hot pursuit' justification for the police entry into the defendant's house without a warrant for his arrest, certainly stands by negative implication for the proposition that an arrest warrant is required in the absence of exigent circumstances... . But we find it unnecessary to decide the question in this case. The rule that `searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment  subject only to a few specifically established and well-delineated exceptions,' [Katz v. United States, supra] is not so frail that its continuing vitality depends on the fate of a supposed doctrine of warrantless arrest." (Emphasis supplied.) at pp. 480-481, 91 S.Ct. at pp. 2045-2046.
We will not extend the application of Coolidge beyond its actual holding, and we are by no means persuaded that the position we took in Falcon, and the reasoning upon which it was based, are no longer valid.
The District Court of Appeal erred in reversing respondent's conviction and discharging respondent on the ground that the arresting officers had ample time to obtain an arrest warrant and erred in qualifying the language of the statute to exclude arrests in dwelling houses in the nighttime. There is no such exception set out in the statute. The arrest of respondent was lawful pursuant to Section 901.15(3), Florida Statute, F.S.A. Furthermore, as reflected by the testimony, after respondent was arrested, he invited the officers into his private dwelling and the lottery tickets sought to be suppressed by respondent were in plain view on the dining room table.
Accordingly, the decision of the District Court is quashed and the cause remanded to that court with instructions to reinstate the Order of the Circuit Court affirming the judgment of conviction and sentence of one year imposed by the Criminal Court of Record.
It is so ordered.
CARLTON, C.J., and BOYD, McCAIN and DEKLE, JJ., concur.