284 So.2d 241 (1973)
STATE of Florida, Appellant,
v.
James RAMERIZ, Appellee.
No. 73-381.
District Court of Appeal of Florida, Fourth District.
October 19, 1973.
Robert L. Shevin, Atty. Gen., Tallahassee, and Nelson E. Bailey and Thomas M. Carney, Asst. Attys. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Richard S. Power, Asst. Public Defender, and Sherry Lefkowitz, Legal Intern, West Palm Beach, for appellee.
MAGER, Judge.
The State appeals the trial court's ruling on defendant's motion to suppress and motion to dismiss.
An information was filed charging defendant with two counts: Count I charged the defendant with possession of cannabis, and Count II charged defendant with resisting an officer with violence. The trial court entered an order as to Count I, suppressing the seizure of the evidence upon the finding that the arrest which was the subject of defendant's motion was unlawful. The trial court entered a subsequent order dismissing Count II on the basis that since the arrest was found to be unlawful Count II relating to resisting the arrest must fall.
A review of the record on appeal and particularly the transcript of testimony reflects that the trial court's finding of an unlawful arrest was predicated primarily *242 upon the time which elapsed between the date of the offense for which defendant's arrest was sought and the date the officers effectuated the arrest; and that such arrest had been accomplished without a warrant. If the arrest was unlawful, then the contraband found as a result of the search incident thereto was properly suppressed; and, further, the charge of resisting arrest would also have been properly dismissed.
The pertinent facts, as reflected from the hearing held on defendant's motion to suppress, are as follows: Officer Calamia, employed by the Orange County Sheriff's Department, testified that while working in the capacity of an undercover police officer attempting to make purchases of narcotics and dangerous drugs came in contact with the defendant on June 20, 1972. On that date an incident occurred at a Royal Castle parking lot in Orange County wherein defendant allegedly attempted to expose the identity of Officer Calamia to other persons present in that lot. Apparently the defendant and the others concluded that Officer Calamia was in fact a police officer. One Anderson, who had been present, indicated that Officer Calamia would not leave the parking lot alive. At that point the said Anderson approached Officer Calamia with a bicycle chain in hand. Officer Calamia drew his gun and the crowd dispersed with the exception of Anderson and the defendant. Officer Calamia further testified that an assault was committed upon him by the defendant on that date when the defendant along with Anderson threw rocks at the vehicle in which Officer Calamia had gotten into as he sought to leave the scene. No arrest was made on June 20, as a result of the incident involving the defendant.
On October 13, 1972, Officer Calamia, accompanied by Deputy Demps and Agent Hoover, proceeded to defendant's home for the purpose of arresting the defendant and one Marino. Officer Calamia testified that he was under the impression that a warrant for the defendant's arrest would be issued on the afternoon of October 13.[1] At the time the officers went out to arrest the defendant and one Marino a warrant had not been issued. The purpose of seeking to arrest Marino was for possession of LSD and for obstructing an officer with violence. The purpose of arresting the defendant was on the charge of aggravated assault growing out of the incident occurring at the Royal Castle parking lot on June 20.
The officers observed defendant and Marino standing at the end of the driveway of defendant's home and proceeded to circle the vicinity. They then stopped their vehicle at defendant's home and approached the defendant and Marino while they were apparently still standing in the driveway. Officer Demps produced identification stating that he had a warrant for defendant's arrest and he announced that defendant was under arrest and defendant was advised of the reason for his arrest. The defendant was alleged to have pushed Deputy Demps out of the way and when Officer Calamia attempted to grab the defendant, the defendant struck Officer Calamia in the face. The officers drew their guns and finally apprehended the defendant who was told to lie on the ground.
*243 A search was then performed on the defendant after he was told to lie on the ground. During the search defendant was told to remove his boots because, in the testimony of Officer Calamia "we were familiar with the reputation of the defendant, and we suspected he might have a weapon". When the boots were removed, marijuana was found in the right boot of the defendant.
During the hearing on the motion to suppress, Officer Calamia was asked why he had waited some four months before attempting to arrest the defendant. The following colloquy occurred between the public defender and Officer Calamia:
"Q Now, were you making this arrest on October 13th for aggravated assault, or obstructing a policeman?
"A We tried to get both charges filed.
"Q I'm not talking about which charges were filed. I'm talking about what were you making the arrest for on October 13th?
"A I believe the charge, that had been filed, was for aggravated assault.
"Q Agg assault?
"A Yeah.
"Q You were asked why you didn't make an arrest that night. Why didn't you make an arrest during the next four months? Why did you wait almost four months to make your arrest?
"A Well, we had other people working undercover in the area. Once you make a sweep of an area, as far as picking up drug dealers are concerned, they become very paranoid, very careful as to who they sell to, and usually your undercover investigations in that area, is very unsuccessful. So, we had my cases but we had several other fellows working undercover and we wanted to allow them to finish their investigations before we picked any of these people up."
It is our opinion, based upon the foregoing facts and applicable judicial decisions, that the trial court erred in its rulings. F.S. Section 901.15, F.S.A., authorizes a peace officer to make an arrest without a warrant under certain specific circumstances:
"901.15 When arrest by officer without a warrant is lawful. A peace officer may arrest a person without a warrant when:
(1) The person has committed a felony or misdemeanor or violated a municipal ordinance in the presence of the officer. Arrest for the commission of a misdemeanor or violation of a municipal ordinance shall be made immediately or in fresh pursuit.
(2) A felony has been committed and he reasonably believes that the person committed it.
(3) He reasonably believes that a felony has been or is being committed and reasonably believes that the person to be arrested has committed or is committing it.
(4) A warrant for the arrest has been issued and is held by another peace officer for execution."
The absence of an arrest warrant, therefore, does not invalidate an arrest if such arrest was based on reasonable ground to believe that a felony had been committed. The record reflects that the purpose for arresting the defendant was based upon the reasonable belief that defendant had committed aggravated assault on Officer Calamia on June 20, 1972.
Moreover, and of particular importance is the proposition that an arrest without a warrant is not invalidated "even though there may have been sufficient time to have obtained an arrest warrant." Reis v. State, Fla.App. 1971, 248 So.2d 666. The *244 court, in Reis, cited the decision in Odom v. United States, 5 Cir.1968, 403 F.2d 45, cert. granted 399 U.S. 904, 90 S.Ct. 2203, 26 L.Ed.2d 559, writ dism'd 400 U.S. 23, 91 S.Ct. 112, 27 L.Ed.2d 122, reh. den. 400 U.S. 984, 91 S.Ct. 363, 27 L.Ed.2d 396. In Odom v. United States, the Court of Appeals for the Fifth Circuit specifically held:
"... The absence of an arrest warrant, even though there may be sufficient time to obtain one, does not invalidate an otherwise valid arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Abramson v. United States (5th Cir.1964) 326 F.2d 565; and Dailey v. United States (5th Cir.1958) 261 F.2d 870."
The decisions in Carter v. State, Fla. App. 1967, 199 So.2d 324, and Perez v. State, Fla.App. 1972, 267 So.2d 33, cited by defendant, do not support the orders under review. Carter held, in part, that where an arrest was made without a warrant "the State must be prepared to show, not only the factual existence at such time of probable cause, but also that the officer or officers had no reasonable opportunity to previously apply for and be issued an arrest or search warrant ...". The Supreme Court of Florida, in Falcon v. State, Fla. 1969, 226 So.2d 399, specifically disapproved of that portion of the Carter decision which sought to impose additional requirements than those set forth in Section 901.15, and observed:
"To the extent that Carter purports to impose requirements other than those set out in Chapter 901, Florida Statutes, F.S.A., for a valid arrest without a warrant, it is erroneous. A similar contention has been rejected by the Federal Courts."
In Perez v. State, supra, the factual circumstances were sufficiently dissimilar as to render that decision inapplicable.[2]
Based upon the foregoing we are of the opinion that the arrest without a warrant on October 13, 1972, was lawful; and the contraband seized as a result of a search incident to the lawful arrest should have been admitted in evidence. See Ackles v. State, Fla.App. 1972, 270 So.2d 39; State v. Gustafson, Fla. 1972, 258 So.2d 1. Having concluded that the arrest was lawful it would logically follow that the court erred in dismissing Count II charging defendant with resisting an officer with violence. See Kirby v. State, Fla.App. 1969, 217 So.2d 619.
Accordingly, the aforementioned orders of the trial court are vacated and set aside and the cause remanded for further proceedings not inconsistent with this opinion.
OWEN, C.J., concurs.
CROSS, J., dissents.
NOTES
[1] With regard to the filing of charges against the defendant and the issuance of a warrant the following colloquy occurred at the hearing below: "(Officer Calamia testifying) Deputy Demps produced his identification and stated that he was a deputy sheriff and had a warrant for the arrest of Mr. Rameriz.

"Q (By Public Defender) He stated that he had a warrant, but in fact, to your knowledge that was no warrant at that time?
"A The charges had been filed. Had been sworn to and been filed.
"Q That wasn't my question. It was your belief that there was no warrant at that time. Is that correct?
"A No, it was not. It was my belief that it had been filed with the clerk's office, that the warrant had just not been turned over to the warrant division of the sheriff's office.
"Q You believe a magistrate had issued a warrant at that time?
"A I believe that a capias had been issued through the County Solicitor's Office. This wasn't a J.P. warrant."
[2] In Perez the police officers, without an arrest or search warrant knowing for several days the circumstances upon which they intended to arrest defendant, waited until midnight and went to this home announcing that they were placing him under arrest and then proceeding to search the premises. The facts in the Perez case did not reflect any basis for the delay or any basis for not securing an arrest or search warrant. In the instant case, the arrest did not occur in the defendant's home and the facts clearly indicate the basis for concluded: waiting several months before effectuating defendant's arrest. Moreover, the decision in Perez appears to lean towards the rationale of Carter v. State, supra, which was rejected by the Supreme Court in Falcon v. State, supra.